UNITED STATES BANKRUPTCY COURT
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IN RE: | ) | Case No. 05-21078-TJC |
| | ) | Chapter 7 |
| MIHN VU HOANG and | ) | |
| THANH HOANG, | ) | |
| | ) | |
| Debtors. | ) | |
| ----------------------------) | | |
| IN RE: | ) | Case No. 05-26521-TJC |
| | ) | Chapter 11 |
| VAN T. VU, | ) | |
| | ) | |
| Debtor. | ) | |
| ----------------------------) | | |
| IN RE: | ) | Case No. 05-26765-TJC |
| | ) | Chapter 11 |
| HAO QUANG VU, | ) | |
| | ) | |
| Debtor. | ) | |
| ----------------------------) | | |
| IN RE: | ) | Case No. 05-90432-TJC |
| | ) | Chapter 11 |
| CYBELE GENERAL PARTNERSHIP, | ) | |
| | ) | |
| Debtor. | ) | |
| ----------------------------) | | |
| IN RE: | ) | Case No. 05-90378-TJC |
| | ) | Chapter 11 |
| MINBILT REALTY, INC., | ) | |
| | ) | |
| Debtor. | ) | |
| ----------------------------) | | |

Audio Operator:          Denita Adams

Proceedings recorded by electronic sound recording, transcript
Produced by transcription service.

# TRANSCRIPTS PLUS

**435 Riverview Circle, New Hope, Pennsylvania 18938**
CourtTranscripts@aol.com

**215-862-1115  (FAX) 215-862-6639**

```
PHONG HOANG,                    )  Adversary No. 05-098020-TJC
                               )
            Plaintiff,         )
                               )
versus                         )
                               )
MINH-VU HOANG and              )
THANH HOANG,                   )
                               )
            Defendants.        )
---------------------------)
HOWARD N. BIERMAN, ET AL.,      )  Adversary No. 05-09091-TJC
                               )
            Plaintiffs,        )
                               )  6500 Cherrywood Lane
versus                         )  Greenbelt, Maryland 20770
                               )
MICHELE D. CURTIS and          )
JUAN D. CURTIS,                )
                               )  May 9, 2006
            Defendants.        )  2:11 P.M.
```

TRANSCRIPT OF STATUS AND SCHEDULING CONFERENCE
BEFORE THE HONORABLE THOMAS J. CATLIOTA
UNITED STATES BANKRUPTCY JUDGE


APPEARANCES:

For Minh Vu Hoang:        IRA C. WOLPERT, ESQ.
                          3 Bethesda Metro Center, Suite 530
                          Bethesda, Maryland 20814-5109

For Gary A. Rosen:        Schlossberg and Associates
                          By:  ROGER SCHLOSSBERG, ESQ.
                          134 W. Washington Street
                          P.O. Box 4227
                          Hagerstown, Maryland 21741-4227

The Trustee:              GARY A. ROSEN, ESQ.
                          One Church Street, Suite 802
                          Rockville, Maryland 20850

For Thanh Hoang:          CHRISTOPHER HAMLIN, ESQ.
                          6411 Ivy Lane, Suite 200
                          Greenbelt, Maryland 20770

Appearances:
(Continued)

| | |
|---|---|
| For Michele and Juan Curtis, Hoang Nguyen, Elena Pope, Thomas and Ioanna Tsianakas, Ann Balczerak, Ho Pak: | CARLOS M. RECIO, ESQ. 1828 L Street NW, Suite 660 Washington, DC 20036 |
| For the U.S. Trustee: | Office of the United States Trustee By:  DAVID I. GOLD, ESQ. 6305 Ivy Lane, Suite 600 Greenbelt, Maryland 20770 |
| For Hewitt Avenue | GERALD F. CHAPMAN, ESQ. 6917 Arlington Road, Suite 214 Bethesda, Maryland 20814 |
| For Hao Quang Vu: | Law Offices of Richard H. Gins, LLC By:  RICHARD H. GINS, ESQ. 3 Bethesda Metro Center, Suite 530 Bethesda, Maryland 20814 |
| For Geoplex Real Estate: | CHARLES McCLAIN, SR., Pro Se 9400 Croom Acrews Drive Upper Marlboro, Maryland 20772 |
| For Ballenger General Partnership, n/k/a Ballenger, LLC: | Rosenberg & Associates By:  MARK DAVID MEYER, ESQ. 7910 Woodmont Avenue, Suite 750 Bethesda, Maryland 20814 |
| For Edward T. Laios: | Bean Kinney & Korman, P.C. By:  MARTIN J.A. YEAGER, ESQ. 2000 North 14th Street, Suite 100 Arlington, Virginia 22201 |
| For Pacific Rim General Partnership: | Law Offices of Ronald Schwartz By:  RONALD L. SCHWARTZ, ESQ. 4907 Niagara Road, Suite 103 College Park, Maryland 20740 |

4

**Appearances:**
**(Continued:**

For Van Vu:                    DAVID E. LYNN, ESQ.
                               11300 Rockville Pike
                               Rockville, Maryland

1          COURTROOM DEPUTY:  On the two o'clock docket, we have

2    the matter of Mihn Vu Hoang and Thanh Hoang.  We have Adversary

3    Number 05-020 (sic), Van T. Vu, Case Number 05-26521; Hao Quang

4    Vu, 05-26765, Cybele General Partnership, 05-90432, and

5    another Adversary 05-09091, also in the Thanh Hoang and Mihn Vu

6    Hoang.

7          Counsel, please identify yourselves for the record.

8          MR. SCHLOSSBERG:  Good afternoon, Your Honor Roger

9    Schlossberg, counsel for Trustee, Gary A. Rosen, accompanied by

10   Mr. Rosen.

11         THE COURT:  Hello, Mr. Schlossberg.

12         MR. SCHLOSSBERG:  Good afternoon, Your Honor.

13         THE COURT:  Hello, Mr. Rosen.

14         MR. GINS:  Good afternoon, Your Honor.  Richard Gins

15   representing Hao Vu.

16         THE COURT:  Mr. Gins, if you would -- it's -- how is

17   -- it's Hao Vu?

18         MR. GINS:  Yes, sir.

19         THE COURT:  Thank you.

20         MR. LYNN:  Good afternoon, Your Honor.  David Lynn

21   here for Van Vu.

22         THE COURT:  Hello, Mr. Lynn.

23         MR. RECIO:  Good afternoon, Your Honor.  I'm Carlos

24   Recio.  I'm representing a number of creditors:   Thomas and

25   Ioanna Tsianakas, Elena Pope, Ann Balczerak and Hoang Nguyen.

1          THE COURT:  Hello, Mr. Recio.

2          MR. GOLD:  Good afternoon, Your Honor.  David Gold on

3    behalf of the United States Trustee.

4          THE COURT:  Hello, Mr. Gold.

5          MR. CHAPMAN:  Good afternoon, Your Honor.  Gerald

6    Chapman on behalf of plaintiff -- creditor, Hewitt Avenue

7    Associates, LLC.

8          MR. WOLPERT:  Good afternoon, Your Honor.  Ira

9    Wolpert on behalf of the debtor,  Minh Vu Hoang.

10          THE COURT:  Hello, Mr. Wolpert.

11          MR. YEAGER:  Good afternoon, Your Honor.  Martin

12    Yeager on behalf of creditor, Edward Laios.

13          THE COURT:  I'm sorry.  Would you repeat your name,

14    please?

15          MR. YEAGER:  Martin Yeager.

16          THE COURT:  Thank you.

17          MR. HAMLIN:  Good afternoon, Your Honor.  Christopher

18    Hamlin for the debtor, Thanh Hoang.

19          THE COURT:  Hello, Mr. Hamlin.

20          MR. SCHWARTZ:  Good afternoon, Your Honor.  Ron

21    Schwartz representing Pacific Rim General Partnership, I

22    believe that's the Cybele case that's --

23          THE COURT:  I was going to ask --

24          MR. SCHWARTZ:  -- associated.  That wasn't called,

25    but that's a related --

1          THE COURT:  Right.

2          MR. SCHWARTZ:  -- Chapter 11 matter.

3          THE COURT:  Is -- is Pacific Rim only involved in the

4  Cybele case?

5          MR. SCHWARTZ:  Only in the Cybele case.

6          THE COURT:  Okay.  Thank you.  Well, I hope everyone

7  received a copy of my order from last Thursday.  I hope there

8  wasn't too much confusion with the exchange of orders.  I had

9  originally, when this case was assigned to me, received a copy

10  of the motion to continue based on the travel schedule of Mr. -

11  - of Mr. -- Mr. Recio.  And I moved everything to the afternoon

12  -- today at one o'clock thinking that by moving it to one

13  o'clock we'd have a little more time to finish matters.

14          When I read all the motions and the responses, it

15  seemed to me that -- that parties were serious about

16  prosecuting all of the matters that were set for today, that we

17  would not finish today.

18          It also seemed to me that I wasn't sure that parties

19  were serious about prosecuting all the matters that were set

20  today.  And I understand that some parties were being informed

21  that this was going to be continued, in any event.

22          So, rather than having a sort of everybody prepare

23  for everything and come in and sort of have a shoot out at the

24  OK Corral, I thought we'd set this as a status conference and a

25  scheduling conference.

1        And so here we are.  I think -- I have -- I have read
2   everything that is set for today -- that was set for today.  I
3   have read the main items in the dockets of the four Chapter 11
4   cases, the two Vu cases, Cybele and Minbilt,  and most of them
5   -- most of the items, Mr. Schlossberg, in the docket of the --
6   of your case, the Hoang case.

7        But I would like to go through a status conference.
8   And you can inform me of sort of what I don't know.  I can -- I
9   can let you know a little bit about what I do know.  My -- I
10  don't think I'm at the crawling stage anymore.  I think I'm at
11  the walking stage on all these cases.  But I'm certainly not at
12  the stage where all of you are.

13        What I would like to do then is have a status
14  conference on each of the cases.  In particular, Mr.
15  Schlossberg, I'd like to hear from you where your case is.
16  We'll -- let me just tell you what I'd like to accomplish
17  today, and then we'll start.  I'd like to sort of hear where
18  your case is.  I know you have a forensic accountant.  I know
19  that you're filing adversary proceedings weekly.  I know that
20  -- and I -- but I don't sort of have the big picture of where
21  you think your case is going.

22        I do know that the Chapter 11s have the motions to
23  dismiss, and we could talk about those and set those in.

24        So, I guess I'd start really with the status
25  conference in talking about the cases.  I'll raise -- if any of

1 you want to raise anything, I'm happy to take that up in this
2 status conference.

3 And then at the end of this, then we'll set, I think,
4 some schedules when we know what we really want to hear and
5 what people do want to hear.  And I'm happy to expedite, if
6 there's -- if there are motions that people want to be heard
7 quickly.

8 I know a lot of these things have been pending since
9 January and February.  And if you want to -- if you want them
10 to be heard quickly, I'm happy to set them in quickly.

11 The -- so, I guess -- I guess I would suggest, Mr.
12 Schlossberg, if we -- we'd start with you.  Let me sort of tell
13 you what I've done, and then you can help fill in the blanks.
14 I've gone through the docket.  I understand it was filed as an
15 11.  A Trustee was appointed.  I take it the Trustee was
16 appointed by consent.

17 Was there a hearing on the motion to appoint the
18 Trustee in the Chapter 11?

19 MR. SCHLOSSBERG:  Your Honor, there were two cases
20 separately.  And in each of the cases, they were filed as 11s.
21 And they were each converted to 7s at different times.
22 Ultimately there were not hearings -- contested hearings on the
23 conversion motions because the debtors conceded the issues and
24 the conversions occurred.

25 And then cases were -- Mr. Rosen was appointed in

1 both of the cases and they were set up for joint

2 administration.  Because at that time, although Mr. Recio's

3 motion to substantively consolidate was pending, the thought

4 was that it was a little bit premature to be addressing that.

5 And we're getting closer to the point where that's not going to

6 be so premature anymore.

7        THE COURT:  That is -- that motion obviously and --

8 is something we'll take up.  We'll talk about, yeah.

9        MR. SCHLOSSBERG:  Okay.

10       THE COURT:  In fact, the -- in fact, Judge Alquist

11 granted joint administration of the two cases, but postponed

12 substantive consolidation consideration back in -- I guess it

13 was August of 2005.

14       MR. SCHLOSSBERG:  That's correct.

15       THE COURT:  Okay.

16       MR. SCHLOSSBERG:  And the motion for substantive

17 consolidation, Your Honor, also goes over to the Van Vu case.

18 That's a -- that motion's also out there.  And based on what

19 we're learning so far from the forensic accountant, I think

20 we're going to ask to present that on mass.

21       THE COURT:  I see.

22       MR. SCHLOSSBERG:  Perhaps with other parties to be

23 joined to that, as well.

24       THE COURT:  So, although the Trustee initially

25 objected to the substantive consolidation on the basis that it

1  was premature, you're saying you're at the point where you

2  probably will be joining that motion?

3      MR. SCHLOSSBERG:  Very much so, Your Honor.  That's

4  to be expected.

5      THE COURT:  The --

6      MR. SCHLOSSBERG:  Now, Your Honor, having said that,

7  just -- I don't want to give you a false impression.  The

8  forensic accountant's work is -- while I wouldn't say it's

9  still in the start-up phase.  It's passed preliminary and it's

10  now into the meat of it.  But we are talking about

11  reconstruction of tens of thousands of transactions.

12      THE COURT:  That's the flavor that I'm looking for.

13  And I'll -- let me just finish sort of walking through my

14  crawling/walking stage and then you can -- I'll turn it over to

15  you --

16      MR. SCHLOSSBERG:  Okay.

17      THE COURT:  -- and you can sort of educate me.

18      MR. SCHLOSSBERG:  All right.

19      THE COURT:  I think that probably would be the best

20  for me.

21      MR. SCHLOSSBERG:  Okay.  Then I'll sit back.

22      THE COURT:  No, no.

23      MR. SCHLOSSBERG:  Okay.

24      THE COURT:  I saw that there's a standstill of the

25  claims objections.

1        MR. SCHLOSSBERG:  Your Honor, this -- this is

2  consistent with the Trustee's position generally in this -- in

3  the Minh and Thahn Hoang cases.  And that is that the IRS claim

4  is so large --

5        THE COURT:  Um-hum.

6        MR. SCHLOSSBERG:  -- that it -- unless the Trustee

7  has extraordinary good fortune in recovery of assets hither to

8  unknown assets, and we do find these fairly regularly now, it's

9  unlikely we're ever going to get passed the priority tax claim.

10  I think that Mr. Recio has acknowledged that by his entry into

11  the standstill agreement because there was no sense wasting

12  time on that.

13        THE COURT:  Right.

14        MR. SCHLOSSBERG:  We had this discussion also with

15  Mr. McClain in front of Judge Alquist at a point several months

16  ago.  And while there was not agreement there, Judge Alquist

17  pushed it out for a few months to let us see where we're ending

18  up.

19        THE COURT:  Um-hum.

20        MR. SCHLOSSBERG:  We would suggest nothing has

21  changed in that regard, Your Honor.  Consideration of any

22  claims at this point, frankly, is a waste of your time and all

23  the parties' time.

24        Similarly, you've got some adversary proceedings

25  brought for relief which, to my eye, only can be cast as

1  unsecured relief.  And those should be put off.  Again, that's

2  not a good use of judicial resources.

3          THE COURT:  That's what I wanted to focus in a little

4  bit, which is the -- there is an actual standstill for Claims 4

5  through 11.

6          There is -- there was set for today a motion to

7  dismiss on the adversary which, as near as I can tell, is a --

8  is a -- sort of a declaratory judgment that Claim Number 9 is a

9  valid claim.  That's one of Mr. Recio's clients and it's

10 Adversary Number 05-9 -- 09020.  And it is basically Mr. --

11         MR. SCHLOSSBERG:  030?

12         THE COURT:  Sorry.  05-09020.

13         MR. SCHLOSSBERG:  Two zero.

14         THE COURT:  It's a motion to dismiss.  But it really

15 is -- Claim Number 9 said we're going to assert an adversary

16 proceeding proving up this claim.  And this is, as I understand

17 it, the adversary proceeding proving up Claim 9.

18         MR. SCHLOSSBERG:  My reading of it would be the same

19 thing.  I think Mr. Recio would probably agree, Your Honor.

20 This is -- this simply goes to establishing the bona fides.

21 Mr. Recio chose --

22         THE COURT:  Right.

23         MR. SCHLOSSBERG:  -- to do it in a slightly different

24 fashion than I might choose, but it certain works.

25         THE COURT:  And so my question was, shouldn't it be

1  incorporated in the standstill?

2          MR. SCHLOSSBERG:  It should be off.  It should be

3  with everything else.

4          THE COURT:  Do you agree with that, Mr. Recio?

5          MR. RECIO:  If I could respond briefly, Your Honor?

6          THE COURT:  Sure, please.

7          MR. RECIO:  Your Honor, that is true for the bulk of

8  the adversary.

9          However, there is a count in the adversary that

10 alleges, perhaps I could amend it to make the language clearer,

11 that there was fraud in the constructive trust theory, and that

12 a 50 percent ownership interest in this property which has been

13 sold.  But nonetheless, 50 percent interest in the net proceeds

14 of the property belong to my client, and it's not property of

15 the estate.

16         THE COURT:  Um-hum.

17         MR. RECIO:  And that narrow theory, and it's a theory

18 that my research has disclosed has viability, albeit -- shall

19 we say it's not embedded in granite in terms of its being

20 accepted by the Bankruptcy Courts nationwide.  I believe that

21 theory is worthy of litigation.  As to everything else, I would

22 agree.

23         THE COURT:  Okay.  So --

24         MR. RECIO:  But the theory that the ownership

25 interest in the property was held in constructive trust because

1  there was an unreported deed that was not recorded and that

2  should have been recorded.  And that, therefore, it's not

3  property of the estate.

4          And for that narrow purpose, I think the adversary

5  should continue.

6          MR. SCHLOSSBERG:  Your Honor, let me just bring you

7  up to speed on that a little bit.  That's property at 501

8  Lamberton Drive.

9          Last week, you -- no, I think Judge Alquist --

10  actually this is the last order that she entered in the case

11  was the free and clear order on the form that we've negotiated

12  out with chambers before doing this, the same form orders

13  throughout the case.  That property was sold, and it was sold

14  free and clear of the interest of Mr. Chapman's client.  Mr.

15  Chapman's client had some judgments attached just before the

16  bankruptcy.

17          We recognize -- and we all are aware that Mr. Recio's

18  client has an unliquidated, nonspecific claim against it.  And

19  that money is being held by Mr. Rosen subject to the free and

20  clear order of Mr. Chapman's client.

21          And I would suggest that we would also continue to

22  hold that money subject to whatever claim it is that Mr.

23  Recio's client can prove up at some point.

24          I understand his point about this fund of money that

25  he may have a claim to.  And perhaps the Court does need to set

1   that in, we've got to get that on the docket at some point.

2   But we've preserved the asset, it's there.

3          THE COURT:  Yeah.  Yeah.  The -- the reason I -- I

4   mean actually this one when I had finished reading the papers,

5   this is one of the ones that occurred to me that we really -- I

6   needed to have the status conference.  Because an awful lot of

7   the complaint and an awful lot of the motion to dismiss is it's

8   not core, it doesn't state a claim.  And obviously events have

9   caught up and passed a lot of that.

10          MR. SCHLOSSBERG:  I agree.

11          THE COURT:  So, it sounds like there's a piece of

12  that action that's going to continue to go forward.  And I

13  guess I'll leave it to you two, unless, Mr. Recio, you want to

14  do something about scheduling to figure out the best way to tee

15  up that little piece, other than having the entire complaint,

16  you know, addressed in the motion to dismiss or -- I mean I'll

17  -- I don't know if you want to --

18          MR. SCHLOSSBERG:  Let me -- let me discuss that with

19  Mr. Recio.

20          THE COURT:  Yeah, okay.

21          MR. SCHLOSSBERG:  Because I have a notion that

22  perhaps we'd do that on a complaint for declaratory relief,

23  just separate, and get that action out separately.

24          THE COURT:  That would -- okay.

25          MR. RECIO:  Your Honor, if I perhaps could arrange a

1    meeting with -- and we could -- there are several issues to

2    discuss.   Perhaps we could resolve it among ourselves --

3               MS. ADAMS:   Counsel --

4               THE COURT:   Yes --

5               MR. SCHLOSSBERG:   It can't be heard.

6               MR. RECIO:   I'm sorry.

7               THE COURT:   If you would, by the way, with so many

8    people, my courtroom deputy reminds me if you please would

9    identify yourself when you speak, and then speak into the

10   microphone.   Thanks.

11              MR. RECIO:   Yes, Your Honor.   Carlos Recio, spelled

12   R-E-C-I-O, I'm counsel for Thomas and Ioanna Tsianakas, Elena

13   Pope, and other creditors.   In this case, we're speaking about

14   Thahn Hoang in Adversary 05-09020.

15              And I think -- I would suggest that Your Honor hold

16   this in abeyance for perhaps a week or two.   And perhaps if I

17   could meet with Mr. Schlossberg and/or Mr. Rosen, we could

18   perhaps come up with something that makes sense from an

19   efficiency or procedural point of view in terms of presenting

20   that issue to the Court.

21              THE COURT:   Okay.   So, what we're going to do, I

22   think, is we're going to stay the motion to dismiss.   And then

23   I'll leave it to you two to bring before the Court, as you

24   decide, the remaining piece of the case.

25              MR. SCHLOSSBERG:   All right, Your Honor.   I'd agree

1  that --

2           THE COURT:  Mr. Schlossberg -- Mr. Schlossberg -- and

3  then back to the objection of claims.  You had Claims 4 through

4  11 that were stayed.  12 is Mr. McClain.  And then 13 and 15,

5  are those also -- do you have an agreement stayed?  I think

6  some responses have been filed, and I think they were set.  But

7  it doesn't sound like it makes a lot -- that one is by Geoplex

8  Real Estate and Janyce Smith.

9           MR. SCHLOSSBERG:  Geoplex Real Estate is also Mr.

10 McClain.

11          THE COURT:  Oh, okay.

12          MR. SCHLOSSBERG:  That's one of his entities.

13          THE COURT:  All right.

14          MR. SCHLOSSBERG:  Janyce --

15          MR. McCLAIN:  Charles McClain, Senior, Your Honor.

16          THE COURT:  Hello, Mr. McClain.

17          MR. SCHLOSSBERG:  Janyce Smith is Mr. Orenstein's

18 client, but I'm surprised I don't see him here today, but our

19 intention was the same.  It should simply be on standstill.  We

20 don't want to -- we're not looking for any default relief in

21 any way.

22          THE COURT:  Very well.  Good.

23          MR. SCHLOSSBERG:  We all play together well.

24          THE COURT:  Just -- I saw, Mr. Schlossberg, you've

25 retained Ms. Clay as the forensic accountant.  I saw the

1 settlement and the compromise regarding dischargeability -- the

2 discharge that has been entered into and was approved by Judge

3 Alquist.

4        MR. SCHLOSSBERG:  And that also, Your Honor, takes

5 care of -- there's a -- I'm looking at your documents, Your

6 Honor.

7        THE COURT:  Is it 105, by any chance, the motion for

8 contempt?

9        MR. SCHLOSSBERG:  No, Your Honor.  I was looking at

10 408, which you still had on.  408 is Mr. Yeager's motion, it

11 was to extend the time for objecting to discharge, but that

12 obviously is moot now.

13        MR. YEAGER:  Correct, Your Honor.

14        THE COURT:  All right.  Mr. Schlossberg, I'll turn it

15 over to you to -- that's -- I've reviewed the docket, as I've

16 said.  I sort of have that understanding of the case.  If you

17 want to -- and I know there's been a lot of lift stays, and I

18 know you've sold a lot of property, and I know there's a number

19 of adversaries.  But if you want to let me know where -- what

20 the Trustee is doing and where the Trustee's going.

21        MR. SCHLOSSBERG:  Overview?

22        THE COURT:  Yeah.

23        MR. SCHLOSSBERG:  Instead of going through all those

24 files that I brought with me here, Your Honor, I'm going to

25 look to make sure there's nothing I need to ask for

1  specifically.

2          The -- the key item in the case -- the case is

3  proceeding on two track:

4          One is known assets.  As to known assets, the Trustee

5  has been selling, as you just noted, and continues to sell

6  property.  And we are before you on a regular basis -- been

7  before Judge Alquist, we'll be before you on a regular basis

8  with requests for orders permitting us to sell the property

9  free and clear of liens.

10         We have -- as a matter of -- term of art, we

11 negotiated with chambers the form of the free and clear order

12 so we didn't have to reinvent the wheel each time we brought it

13 in.  And if the Court wants changes in that form of order, of

14 course, we'll make those.  But we'd like to get into a

15 situation where we can simply bring them into you fairly

16 quickly.

17         THE COURT:  And I'm sorry, but what you're doing

18 there is you're noticing it up.  And if there's no objection --

19 are you getting an order or are you just going ahead with the

20 sale?

21         MR. SCHLOSSBERG:  No, we're coming in and getting an

22 order from you, as well, especially because of character of

23 these properties.  Titles -- not a single property has had

24 clean title.  So, it's just the way they work.  We have to pick

25 our way through them each time.  But we've needed a free and

1  clear with respect to virtually every property because Mr.

2  Chapman was exhaustive in getting not only his judgment, but in

3  getting a lis pendens on every entities' possible name, all

4  these alter ego entities.  So, we -- we -- coming back to you

5  for those in every case.

6       We generally are doing the notice of the sale -- the

7  2002 notice of sale.  We're simply doing those first.  And

8  assuming we have no objections on those, then we're coming in

9  with the consent order to sell free and clear so as not to

10  bollix up the docket.  We're bringing those in right at the

11  end, okay?

12       And we've -- we've had real cooperation as between my

13  office and chambers in terms of we get it to you a few days

14  before the scheduled settlement, we tell you it's by consent,

15  it comes back out to us and we get it done.

16       The other track, of course, is the forensic track in

17  the case.  Through -- through the efforts of Ms. Clay's firm,

18  we are doing this reconstruction.  Through this reconstruction,

19  you know how it is in a forensic fraud examination --

20  investigation, you'll find a check.  And the check then got

21  deposited in an account.  What account's that?  And then we'll

22  look at that account, we have to go through all the checks in

23  and out of that account.

24       It's just -- it's torture to go through.  We will be

25  requesting the Court's assistance with a number of enabling

1  orders in the nature of 2004s for documents from a plethora of

2  banks.  We're now -- right now identifying the banks where we

3  need original entry documents.  A great deal of our information

4  has come from files that were available -- made available to us

5  in respect of the settlement companies that were doing these

6  closings.  We're going to need more from them, as well.

7        We're also going to need information from the auction

8  companies because as it were, funds seemed to go from one

9  entity's name into another entity's property.  And tracing that

10 trail has been very difficult.

11       I don't expect that we're going to have anything in

12 the nature of a final report for months yet, many months.

13       Limitations will start to loom as an issue next May.

14 So, we are very conscious to the fact that we have this 12-

15 month time frame to get to suit on everything.

16       THE COURT:  I think tomorrow is the anniversary of

17 the filing of the case.

18       MR. SCHLOSSBERG:  Of the first.

19       THE COURT:  Yes.

20       MR. SCHLOSSBERG:  And -- and so -- obviously we have

21 a year yet to get to those.  All the avoidance actions are

22 going to have to be brought in that period of time.

23       We are vitally concerned, though, Your Honor, that --

24 and we may be asking you shortly to look at an expediting of

25 whatever substantive consolidation motion is presently pending,

1   and the ones that we anticipate will be filed within the next

2   30 days to get those on in a hurry.  Because it appears to us

3   that there is a substantial risk of assets continuing to move

4   around on entities that are not within the jurisdiction of the

5   Court right now.  Or arguably not within the jurisdiction.

6           THE COURT:  Um-hum.

7           MR. SCHLOSSBERG:  The Trustee's theory might be that

8   they are because they're alter egos.

9           THE COURT:  Um-hum.

10          MR. SCHLOSSBERG:  But that doesn't do much good for

11  title companies.  So, we need to get it in.

12          There was a third tract to the case, and that was the

13  one of the discharges.  The discharge litigation.  What I think

14  in Mr. Rosen's and my fee applications refer to as the bad acts

15  issues.  Those bad acts issues are no longer front and center

16  because of the discharge having been resolved.  They are a

17  subject of continued work because they may go to referrals and

18  they may also go to the justification for the substantive

19  consolidation and the like.

20          That's an overview of this case.  It's very

21  simplistic, I realize.  An awful lot of detail that I jumped

22  pass there.

23          You have a number of items that were on your orders

24  -- excuse me, on your notices for today, Your Honor.  We've

25  talked about the proofs of claim.  We've talked about the

1  motion to extend time all being disposed of.  The other -- the

2  other would be the substantive consolidation in this particular

3  case.

4          THE COURT:  Has the Trustee done any work on or have

5  there been discussions with the IRS as to the validity of the

6  IRS claim?  Or is that something that is down the road or --

7          MR. SCHLOSSBERG:  There are -- there are daily

8  consultations with the IRS, Your Honor.

9          THE COURT:  Do you -- other than the substantive

10  consolidation actions and the discovery actions you mentioned

11  and the selling assets, do you anticipate any additional

12  litigation, I guess as you turn -- turn through the Trustee's

13  findings?

14          MR. SCHLOSSBERG:  Yes.

15          THE COURT:  Yeah, okay.

16          MR. SCHLOSSBERG:  I anticipate an extraordinarily

17  large amount of avoidance actions.  And that will depend, of

18  course -- some of them will depend on what the Court does with

19  substantive consolidation.

20          THE COURT:  Um-hum.

21          MR. SCHLOSSBERG:  If the cases are substantively

22  consolidated, we've obviously wiped out the need to avoid

23  transfers.  But there are a lot of technical transfers also,

24  perhaps the banks, settlement companies, auctioneers,

25  foreclosing agents that all may end up being technical

1  avoidance actions, as well.  It's a wealth of litigation.

2          THE COURT:  Okay.  Actually before we -- if you have

3  nothing further, before we turn to the actual matters, I was

4  going to give Mr. Wolpert or Mr. Hamlin an opportunity if they

5  wanted to address the Court in a status.  Otherwise we'll start

6  taking up the matters.  It's up to you, Mr. Wolpert.

7          MR. WOLPERT:  Your Honor, the only matter that I

8  would like to address is the -- is the pending involuntary

9  against Minbilt, which is the last item the Court has on its --

10         THE COURT:  Right.

11         MR. WOLPERT:  -- transmission.

12         THE COURT:  And that's set for Monday.

13         MR. WOLPERT:  Item 6 --

14         THE COURT:  That's one of the matters I wanted to --

15         MR. WOLPERT:  Item 6.  Mr. Rosen and I have agreed

16 that notwithstanding the fact that there's a status conference

17 set for next week, we'd like the status conference today.  And

18 as far as I'm concerned, the Court can issue an order involving

19 when discovery is supposed to be completed, motions to be

20 filed, the typical scheduling order that would be entered.

21         And I don't know whether Mr. Rosen has any

22 preferences on that.  Mr. Schlossberg is not in that case yet,

23 are you?

24         MR. SCHLOSSBERG:  I'm not sure, Mr. Wolpert.  You

25 certainly have been --

1          MR. WOLPERT:  I don't think you've entered your

2  appearance in that case.

3          MR. SCHLOSSBERG:  You've certainly been talking to me

4  and writing me threatening letters there, so I think I can

5  state that.

6                         (Laughter)

7          MR. WOLPERT:  I have been pining for him to get into

8  the case, but he has been resisting.

9                         (Laughter)

10          MR. SCHLOSSBERG:  Your Honor, I am in the case.

11          THE COURT:  Mr. Wolpert, I would believe that if you

12  pined for anything, you can get it.

13                         (Laughter)

14          MR. SCHLOSSBERG:  It would happen, Your Honor, if Mr.

15  Wolpert pines --

16          MR. WOLPERT:  Uh --

17          MR. SCHLOSSBERG:  -- or whines.

18          MR. WOLPERT:  The -- the issue -- the issue in the

19  case, I think, is -- the way it's been teed up right now is

20  that Mr. Rosen has filed the involuntary against this entity

21  which just owns one piece of property in Silver Spring on the

22  basis that my client has told him that she borrowed money from

23  a gentleman to pay the real estate taxes.  And, therefore, as a

24  creditor of hers, he has a claim against Minbilt.  Minbilt has

25  no other creditors, so he filed the involuntary.

1          My response to that was why do they believe her now

2   when they didn't believe her before?  And I have given Mr.

3   Rosen copies of a check and a deed of trust which shows that

4   there was actually money paid to the entity and a deed of trust

5   filed.  And I've told Mr. Rosen I'm going to file a summary

6   judgment motion on that very shortly.

7          So, I'd like to get a scheduling order in that case

8   and get it moving.

9          THE COURT:  The -- the -- the involuntary petition

10  was scheduled for Monday, May 15th, that was a pretrial?

11          MR. SCHLOSSBERG:  It was a status conference.

12          MR. WOLPERT:  It was a status conference.

13          THE COURT:  It was status conference.

14          MR. WOLPERT:  I'd like to get that case going.

15          THE COURT:  Well, what -- Mr. Schlossberg, you don't

16  have an objection?  Or Mr. Rosen?  I'm not sure who the counsel

17  is.  I know Mr. Rosen signed the petition.  But if Mr.

18  Schlossberg is appearing --

19          MR. SCHLOSSBERG:  Your Honor, we don't have an

20  objection to getting this case moving forward.

21          THE COURT:  Yes.

22          MR. SCHLOSSBERG:  We'd like to do that.

23          THE COURT:  Okay.

24          MR. SCHLOSSBERG:  We want to take some discovery

25  here, among other things.

1          THE COURT:  Sure.

2          MR. SCHLOSSBERG:  We don't believe Minbilt doesn't

3  have any other creditors.

4          THE COURT:  I was going to say you don't have an

5  objection to having that status conference today?

6          MR. SCHLOSSBERG:  No.

7          MR. WOLPERT:  No, I don't.

8          THE COURT:  Okay.  So, what -- how much time would

9  you like for discovery for that matter?  For the involuntary.

10         MR. SCHLOSSBERG:  120 days, Your Honor.

11         THE COURT:  Do you -- either of you expect there'd be

12  expert witnesses or expert reports?

13         MR. SCHLOSSBERG:  Yes, Your Honor.

14         THE COURT:  You do.

15         MR. WOLPERT:  I'm certain there will be.

16         THE COURT:  Okay.  So, if we have 120-day discovery,

17  you want expert -- experts to be identified within that 120-day

18  period?  75 days?  90 days?  Or afterwards?

19         MR. SCHLOSSBERG:  Well, here's the problem, Your

20  Honor.  The expert the Trustee is going to have is going to be

21  Ms. Clay.  And it's going to be -- what will be determinative

22  of her report will be the extent to which her forensic

23  investigation bears fruit within -- if she -- if we had to

24  identify experts and exchange reports in 30 days, we couldn't

25  do it.

1          THE COURT:  Right.

2          MR. SCHLOSSBERG:  We just don't have the information

3    yet.  It would need to be near the end of that period.  And,

4    frankly, if we put it at the end of that period and left open

5    that you could then take a deposition of her afterwards, or

6    identify cross expert, that would be fine.  It can be open as

7    to all issues -- excuse me -- closed as to all issues but

8    experts.

9          THE COURT:  Well, why don't we -- why don't we have

10   100 -- a discovery period of 150 days?  And you get 120 days to

11   identify your expert.

12          And, Mr. Wolpert, if you need time then after -- 14

13   days after that, you can identify a countering expert, and then

14   it would give you two weeks to depose each other's experts, if

15   that's enough time.

16          MR. SCHLOSSBERG:  That would work.  And if it doesn't

17   work, Mr. Wolpert and I can cooperate and get that done, Your

18   Honor.

19          THE COURT:  All right.  So, we'll enter -- we'll

20   enter that.  And then we'll enter a -- we can -- we can set

21   that in for -- for -- excuse me --

22                          (Pause)

23          THE COURT:  We can -- and then we'll -- so, we'll --

24   we'll send in a scheduling order to that effect.  And then

25   we'll set a trial -- do you want to wait -- at this point I'm

1 sure you don't know how much trial --

2　　　　　MR. SCHLOSSBERG:  Your Honor, I think we might be

3 better served by having a status conference at which then we

4 can just set trial.

5　　　　　MR. WOLPERT:  I agree.

6　　　　　THE COURT:  All right.

7　　　　　MR. WOLPERT:  I agree.

8　　　　　THE COURT:  Let's -- do you want to --

9　　　　　　　　　　(Pause)

10　　　　　THE COURT:  We'll set a -- we'll issue a scheduling

11 order with those times and a status conference, October 11th at

12 ten o'clock.

13　　　　　MR. SCHLOSSBERG:  10/11, ten o'clock?

14　　　　　THE COURT:  Yes.

15　　　　　MR. SCHLOSSBERG:  Okay.

16　　　　　MR. WOLPERT:  The rest of the matters that would

17 involve me, I've filed pleadings and I just submit, I don't

18 think there's anything more I can add to whatever I've filed.

19　　　　　MR. HAMLIN:  Good afternoon, Your Honor.  Christopher

20 Hamlin for Thanh Hoang.

21　　　　　Your Honor, we -- I would just join with Mr. Wolpert,

22 we have pleadings pending and we would just continue to proceed

23 with the litigation as noted.

24　　　　　THE COURT:  Okay.

25　　　　　MR. HAMLIN:  Thank you.

1          MR. GINS:  Your Honor, Richard Gins, Hao Vu.  All I

2 have pending, Your Honor, is a motion to dismiss and a motion

3 to stay discovery.  And Mr. Rosen has brought two adversaries

4 against my client on two pieces of property.

5          The adversaries are being set in the normal course.

6 I would like to get the motion to stay and the motion to

7 dismiss set.

8          THE COURT:  I believe, Mr. Gins, one of your

9 adversaries has a pretrial scheduled for May 15th, as well,

10 Monday.

11          MR. GINS:  Yes.

12          THE COURT:  Would you also like to do that today?  Or

13 do you want to come back on Monday for a pretrial?

14          MR. SCHLOSSBERG:  Do you want to do that today?

15          THE COURT:  If you want to come back Monday, that's

16 fine with me.  If you'd rather just take care of it today, we

17 could take care of it today.

18          MR. GINS:  I could take care of it today.  Let me

19 just see if I'm going to be here Monday, Your Honor, on

20 something else.

21          MR. SCHLOSSBERG:  Your Honor, perhaps Mr. Rosen and

22 Mr. Gins, while you're doing something else, can talk about

23 this and we can come back in and have the hearing today.

24          THE COURT:  On my -- on adversary proceedings, by the

25 way, if you submit to me a Rule 26(f) statement telling me how

1  much time you need for discovery, I waive the requirement for

2  you to come into pretrials.

3          MR. SCHLOSSBERG:  Excellent.

4          THE COURT:  I'm happy to do that.

5          MR. SCHLOSSBERG:  Excellent.

6          MR. GINS:  Okay.

7          THE COURT:  So, if you want to do something before

8  Monday, tell me how much time you need for discovery and when

9  -- you don't have to do that now.  But --

10          (Attorneys confering off-the-record)

11          MR. GINS:  Okay, that's okay with me.

12          THE COURT:  If you submit a joint Rule 26(f)

13  statement telling me how much time you need for discovery, then

14  I'll just enter into pretrial order.

15          MR. GINS:  That's in the adversaries, Your Honor, or

16  the status conference and motion to dismiss?

17          THE COURT:  That's in the adversary.  So, we'll --

18          MR. GINS:  That's in the adversaries, Judge?

19          MR. SCHLOSSBERG:  Yeah.

20          THE COURT:  Yeah.

21          MR. GINS:  Okay.

22          THE COURT:  That's in the adversary.  But I know you

23  want to set your motion to dismiss.

24          MR. GINS:  Yes, I --

25          THE COURT:  Let me just make sure I have everything

1  in your case.  We have a motion to dismiss.  There's an

2  objection to claim and a motion for protective order, as well,

3  that haven't been set but that are pending in your case.  It's

4  the motion -- it's the objection to --

5       MR. GINS:  I objected to his claim, which is the

6  adversary really.

7       THE COURT:  Does anyone else need -- in terms of

8  setting these in -- some of them I'd prefer not to -- I mean it

9  looks like we're going to cut through a fair amount of this and

10 we're going to separately try -- separately schedule some of

11 the more factually intensive matters, such as substantive

12 consolidation.

13      I think it was Judge Alquist's practice to sort of

14 set an omnibus date for this case.

15      MR. SCHLOSSBERG:  What we had done, Your Honor, and

16 it's fallen apart in the last few months with the move and

17 transfers.  What we had done, the Judge was giving us one day a

18 month as an omnibus day and we could put pretty much anything

19 in on the omnibus days and we'd get to it.

20      If your schedule permits that, I think this is the

21 ideal case for that because there's so much in so many

22 directions.

23      THE COURT:  Right.  As long as it doesn't -- we don't

24 end up with, for example, two motions for substantive

25 consolidated on one day.  I mean it -- along with 26 other

1  things.

2         MR. SCHLOSSBERG:  I don't think anybody in this room

3  -- it's true for myself, though.  I would not be bringing to

4  the Court's attention for the omnibus day anything that was

5  going to take a substantial period of time unless it was

6  emergent.

7         THE COURT:  The only -- and I have no problem with

8  that practice.  The only hesitation I have is we have courtroom

9  limitations because we now have three judges sharing two

10  courts.

11         But why don't we -- let me just check with my

12  courtroom deputy and see if we can --

13                    (Pause)

14         THE COURT:  This is what we could do.  If we want to

15  have hearings in May and I'll let the parties decide if they

16  need -- Mr. Gins, if you want to have your motion to dismiss

17  made.  I have two afternoons, May 23rd and May 24th.  If we

18  wanted to set an omnibus day, June 16th would be available.

19  So, if we wanted to split these up.  It's fine with me if the

20  parties want -- Mr. Gins, if you want to have your motion to

21  dismiss heard before June --

22         MR. GINS:  What were your dates, Your Honor, June 20

23  --

24         THE COURT:  May 23rd and May 24th in the afternoon at

25  two o'clock or June 16th, all day.

1       And, Mr. Schlossberg, I'll leave it to you to decide

2  whether some of these matters should be linked to some of your

3  other matters.

4       MR. SCHLOSSBERG:  I appreciate that, Your Honor.

5       MR. GINS:  Your Honor, I could do my motion on the

6  24th in the afternoon.

7       MR. SCHLOSSBERG:  Your Honor, and Mr. McClain and I

8  have something here in front of you already on the 24th at 2

9  P.M.  If we could put it on the two o'clock docket, I'd be

10  happy to -- we would be doing the motion for protective order

11  in Mr. Gins's case that day.  We can't do the motion to dismiss

12  until the motion for protective order is resolved.

13       THE COURT:  Can -- uh --

14       MR. GINS:  Your Honor, I'd like them both heard at

15  that time.  I think the Court might think he's not entitled to

16  discovery.

17       THE COURT:  Well, I don't -- I -- I can't rule on the

18  merits today whether one of those must go before the other.

19  So, why don't we schedule them both at the same time.  And, Mr.

20  Schlossberg, you could argue that we have to deal with the

21  protective order first.

22       MR. SCHLOSSBERG:  That's fine, Your Honor.

23       THE COURT:  We do have other things set for the 24th.

24  But I think we'll be able to fit some things in.  So --

25       MR. SCHLOSSBERG:  All right.  So, 5/24, 2 P.M. --

1        THE COURT:  2 P.M.

2        MR. SCHLOSSBERG:  -- we're going to do the motion for

3  protective order and the motion to dismiss in Hao Vu.

4        THE COURT:  Yes.  And then -- and am I to understand

5  that the objection to the claim of Mr. Rosen, which is Docket

6  77 in that case, that's going to be deferred until we get

7  passed these initial things?

8        MR. SCHLOSSBERG:  My understanding is that that

9  should be tied together with the Ainsley (phonetic) adversary,

10  those go together.

11        And actually, Your Honor, if I'm understanding this

12  correctly, and I'll confirm with both my client and with Mr.

13  Gins, perhaps we'll move to consolidate those two matters so

14  that the claim is heard with the adversary.  We've done that in

15  some other matters in this case.

16        THE COURT:  That would be -- that would be good.  And

17  we -- so, 77 will -- you'll let me know what 77 will likely be

18  linked with?

19        MR. SCHLOSSBERG:  Uh, you're doing numbers, Your

20  Honor.

21        THE COURT:  Oh, sorry.  Sorry.  The objection to

22  claim in the -- in the Hao Vu case --

23        MR. SCHLOSSBERG:  Hao Vu.

24        THE COURT:  Hao Vu -- Hao Vu case will be linked to

25  the adversary Rosen v. Hoang, which is 06-01124.  And that's

1  the Ainsley Road adversary?

2          MR. SCHLOSSBERG:  Ainsley Road, yes.

3          THE COURT:  You have two adversaries:  One is the

4  Ainsley Road adversary, and one is the Janssen Place adversary.

5          MR. GINS:  I don't remember which one.

6          MR. SCHLOSSBERG:  Actually Mr. Rosen thinks it's the

7  Janssen.

8          Your Honor, let us work that out, okay?  And we'll

9  link the objection to claim to the one it should be linked to,

10 and we'll file a motion to consolidate those.  There will be a

11 consent motion, Mr. Gins and I will agree on that.

12                          (Pause)

13         THE COURT:  Okay.  And then for the -- for the May

14 15th pretrial in the -- in the Ainsley matter, you're going to

15 submit a Rule 26(f) statement.  And if you don't, then you'll

16 appear on May 15th.

17         MR. SCHLOSSBERG:  We'll submit it.  Mr. Gins and I

18 just agreed to the terms of it, Your Honor.

19         THE COURT:  Okay.

20         MR. SCHLOSSBERG:  Your Honor, do you have a preferred

21 form of order you want to use on those?

22         THE COURT:  Scheduling order?  I do have a scheduling

23 order that we've adopted.  It includes a time for a counter

24 designation and designation of experts.  And it includes --

25 I've just added a time for designation of deposition transcript

1  pages, if you're going to use those at trial.

2          MR. SCHLOSSBERG:  Your Honor, can I -- can I contact

3  your Law Clerk and ask for a copy of that?

4          THE COURT:  Yes.

5          MR. SCHLOSSBERG:  Okay.  I'll do that -- was that, by

6  the way, Mr. Abou Antoun?

7          THE COURT:  That was Mr. Abou Antoun, who's my Law

8  Clerk.

9          MR. SCHLOSSBERG:  Okay.

10         MR. GINS:  Your Honor, I don't know how to do it, but

11  maybe you ought to put that on the web page, then everyone will

12  have --

13         MR. SCHLOSSBERG:  You don't know how to go to the web

14  page.

15         MR. GINS:  Pardon me?

16         MR. SCHLOSSBERG:  Oh, never mind.

17         MR. GINS:  I don't know how to do it, but I --

18                    (Laughter)

19         THE COURT:  I don't object to people calling my Law

20  Clerk as long as you're not asking him for substantive

21  decisions in the cases.  But if -- for procedural matters and

22  to get forms, I don't object to them.  At least -- maybe I'll

23  learn, but --

24         MR. SCHLOSSBERG:  Okay.  All right, but I'll do that.

25         THE COURT:  But -- yeah, please feel free to call him

1  and he'll e-mail it to you.   All right.

2         MR. GINS:  Can we leave, Your Honor, after our

3  clients are done?

4         THE COURT:  You may, yes.

5         MR. GINS:  Thank you.

6         THE COURT:  Is that everything with you, Mr. Gins?

7         MR. GINS:  Yes, sir.

8         MR. WOLPERT:  Can I also?

9         THE COURT:  You may, Mr. Wolpert.

10         MR. WOLPERT:  Thank you, Your Honor.

11         THE COURT:  Thank you for appearing.

12         MR. WOLPERT:  Always a pleasure.

13         MR. HAMLIN:  Your Honor, Christopher Hamlin.  May we

14  be excused?

15         THE COURT:  Uh --

16         MR. HANLEY:  I believe that's all for us.

17         THE COURT:  Well, except I believe -- well, were we

18  going to talk about scheduling on the substantive consolidation

19  motions or not?

20         MR. SCHLOSSBERG:  Well, Your Honor, I don't think we

21  can -- you asked me for an overview --

22         THE COURT:  Yes.

23         MR. SCHLOSSBERG:  -- and that's what I was giving

24  you.

25         THE COURT:  Right.

1          MR. SCHLOSSBERG:  How I thought the way the case

2  going to go, Mr. Rosen sees it.

3          THE COURT:  Right.

4          MR. SCHLOSSBERG:  We have not filed those motions for

5  substantive consolidation on the part of the Trustee, the U.S.

6  Trustee has an interest in this, as well.  And I don't -- I

7  think it would be premature to set the date on those at this

8  moment.

9          THE COURT:  All right.  And, Mr. --

10          MR. SCHLOSSBERG:  But I want you to know that's what

11  we're expecting, that's where we're headed.

12          THE COURT:  Mr. Recio, are you comfortable -- this --

13  you have a motion pending to substantively consolidate, and are

14  you on board with Mr. Schlossberg's desire which sounds like to

15  let that motion percolate while he continues his -- some

16  discovery?  Until he decides -- Mr. Rosen decides whether he's

17  going to join that motion?

18          MR. RECIO:  Yes, Your Honor.  Carlos Recio for the

19  record, R-E-C-I-O.

20          Yes, Your Honor.  I did file the motion.

21          THE COURT:  Right.

22          MR. RECIO:  And it's -- it's ultimately a motion that

23  is -- it is highly appropriate that the Trustee make --

24  pursuant to his investigation, make the decision.  So, I am in

25  accord with what Mr. Schlossberg and Mr. Rosen suggested in

1 that area.

2        I would bring only one thing to Your Honor's
3 attention.  I filed discovery in connection with this motion --
4 just written discovery initially.

5        THE COURT:  Well, let -- before you do that.  Let me
6 just make -- so -- now, the motion -- your motions for
7 substantive consolidation were scheduled for today.  What I
8 understand we're going to do is we're going to hold those in
9 abeyance until -- for some time indefinite until you and/or Mr.
10 Schlossberg come to the Court and seek to have those motions
11 heard.  Or until the defendants -- the respondents in those
12 motions file whatever they decide to file.  But at this point,
13 we're not going to reschedule that motion -- your motions for
14 substantive consolidation at any time set.

15        MR. RECIO:  That is correct, Your Honor.

16        THE COURT:  Okay.

17        MR. RECIO:  I am in agreement with that.

18        THE COURT:  All right.

19        MR. RECIO:  I believe we are in agreement with that.
20 The only additional item I was suggesting was I did issue
21 discovery in connection, which I was going to present to the
22 Court -- had the Court substantively, you know, gone forward
23 with the motion.

24        As to Van Vu, I filed a motion to compel.  I believe
25 I -- for some reason, I only filed it in her case, I didn't on

1  the Hoang case.  And I -- I only have only one of my clients,

2  Elena Pope, has a filed proof of claim as to Van Vu, the others

3  are in the Hoang case.

4       And I received a check -- a bank check that -- from

5  Mr. Lynn, Van Vu's attorney, paying off his, Ms. Pope's claim,

6  in the tune of about $10,000.  And he now says you don't have

7  to answer the discovery.  And I believe it would be appropriate

8  that this Court -- I disagree with that respectively, that he

9  cannot moot a motion to substantively consolidate filed by a

10  series of creditors on that basis.  And I believe it would be

11  helpful to the Court, but ultimately really to the Trustee if

12  at least those discovery answers were compelled by this Court.

13  That the only objection is, oh, we paid you off and you don't

14  have standing anymore.

15       The payoff was, by the way, supposedly from an

16  unnamed third party benefactor or lenders who paid off the

17  $10,000, Your Honor.  You will see a lot of that going on in

18  this case.

19       THE COURT:  That's -- Van Vu -- that's a motion for

20  protective order and a motion to compel discovery.  All that

21  discovery was in connection with the substantive consolidation

22  motion?

23       MR. RECIO:  That is correct, Your Honor.

24       THE COURT:  All right.  Well, obviously I -- we said

25  this is not going to be a hearing on the merits.  So, I don't

1  want to sandbag anybody and have a hearing on the merits.

2          But I would like to hear from Mr. Lynn.   I guess we

3  -- we're now -- we've sort of moved into the Van Vu case.   And

4  if you want to --

5          MR. LYNN:  Thank you, Your Honor.

6          THE COURT:  -- either tell me anything about the plan

7  case that Mr. Schlossberg discussed, or you want to just talk

8  about your case and what you'd like to see happen.

9          MR. LYNN:  Thank you, Your Honor.  First I'd like to

10  respond to Mr. Recio, if I may.  It is correct that my client

11  made a decision rather than to litigate the claims that were

12  filed by his client in her case, that she borrowed money from a

13  third party and paid those claims in full.  I don't think

14  there's any dispute about that.  Mr. Recio has confirmed that

15  the money's been received.

16          It would be our position that that moots his

17  discovery taken in our case.  The issue is standing.  I'm not

18  going to get into the merits today.

19          THE COURT:  Right.

20          MR. LYNN:  That's not what Your Honor asked us to do.

21          THE COURT:  Right.

22          MR. LYNN:  We had also filed a motion to dismiss the

23  Chapter 11 case.  Yesterday I withdrew that motion to dismiss

24  without prejudice.

25          We've also filed a plan and disclosure statement.

1  And I think what would be appropriate in this -- a status

2  conference point of view would be to ask the Court to set the

3  disclosure statement hearing for a date certain so that I might

4  circulate the disclosure statement along with an appropriate

5  order and continue with that process.

6         THE COURT:  On the -- on the discovery -- I take it

7  that would be a relatively short hearing.  Mr. Recio, let's set

8  -- in your motion for discovery from Mr. Vu -- excuse me -- Ms.

9  Vu?

10         MR. RECIO:  I'm sorry, Your Honor.  I didn't

11  understand the question.

12         THE COURT:  I think we'll set in the motion for

13  protective order and the discovery for a hearing.

14         MR. RECIO:  That would be fine, Your Honor.  It would

15  be a very short hearing --

16         THE COURT:  It would be --

17         MR. RECIO:  -- because I think you've heard the

18  substance of it here.  But nonetheless, you're correct, it

19  would be appropriate for it to be separately considered.

20         THE COURT:  If you both -- I said I don't want to

21  sandbag you.  If you both want to argue that today, we could

22  argue that today.

23         But otherwise, I'm happy to set it in for a hearing.

24  I just don't want to -- you both -- you -- I'm getting the

25  sense from you all that there's not a whole lot more to say.

1  But I -- I'll be glad to set it in for a hearing.

2          MR. RECIO:  Your Honor, I'd just as soon Your Honor

3  rule today speaking for myself.

4          THE COURT:  Mr. Lynn, it's up to you.  What would you

5  like?

6          MR. LYNN:  I have no problem with that, Your Honor.

7          THE COURT:  Arguing it today?

8          MR. LYNN:  Yes.

9          THE COURT:  Okay.  Let's -- let's wait until the end

10 of the hearing, though, at the status conference.  It -- okay.

11         MR. LYNN:  I believe, Your Honor, that that concludes

12 the matters that my client is involved in.

13         THE COURT:  All right.  I know -- let me look at the

14 plan -- disclosure statement and we'll set a disclosure

15 statement hearing and we'll issue notice on that.

16         MR. LYNN:  Very well.  Thank you, Your Honor.

17         MR. SCHLOSSBERG:  Your Honor, on that last point, if

18 I may, the Van Vu case is one which is very much in our sights

19 on the substantive consolidation issues.

20             While I recognize that a disclosure statement has

21 been filed and needs to be noticed out, I would not think that

22 it would be as valuable for the Court to consider that in the

23 absence of what's going to be filed on the -- what's likely to

24 be filed on the substantive consolidation side.  Otherwise we

25 may have ourselves deep into a plan confirmation process on a

1  matter which will be subject to, in the Trustee's eyes,

2  substantive consolidation.

3            THE COURT:  Um-hum.

4            MR. SCHLOSSBERG:  And, again, I think we're back to

5  that allocation of your resources and where we're going.  So, I

6  thrown that out to the Court.

7            THE COURT:  Um-hum.

8            MR. SCHLOSSBERG:  I wish I could tell you right now,

9  Your Honor, I know that within 45 days I'll be able to file

10  this motion.

11           THE COURT: I understand.  I understand.

12           MR. SCHLOSSBERG:  I'm just not certain I can tell you

13  that today.

14           THE COURT:  Mr. Lynn?

15           MR. LYNN:  Just to respond to that point, Your Honor.

16  My client is most eager for the bankruptcy process for her to

17  be over.  We withdrew our motion to dismiss.

18        And I think it's appropriate for the Court to

19  entertain the disclosure statement in due course.  If Mr.

20  Schlossberg or Mr. Recio has something to file in response,

21  then I'm sure that they'll do that.  But I don't think that's a

22  reason for the Court to delay scheduling a hearing on the

23  disclosure statement.

24          THE COURT:  Okay.  Well, let me -- let me review the

25  disclosure statement and then -- and we'll set a date for the

1  hearing on that.

2          MR. LYNN:  Okay.

3          THE COURT:  We'll let you know.

4          MR. LYNN:  Thank you, Your Honor.

5          THE COURT:  You had a -- I don't know if -- is anyone

6  here on the Bierman v. Curtis case?

7          MR. MEYER:  Yes.

8          THE COURT:  And there's a related adversary

9  proceeding to that, which is -- that's the adversary proceeding

10  on 10405 Denver Terrace property?

11          MR. MEYER:  Good afternoon, Your Honor.  Mark Meyer

12  for Ballenger and Alex Li.

13          THE COURT:  Good afternoon, Mr. Meyer.

14          MR. RECIO:   Good afternoon again, Your Honor.

15  Carlos Recio and I'm representing Michele Curtis.

16          THE COURT:  The --

17                  (Pause)

18          THE COURT:  What I understand in the Bierman v.

19  Curtis case is that it was to be held in abeyance until Mr.

20  Rosen filed his declaratory judgment.  That the property at

21  10405 Denver Terrace is property of the estate.  And that's now

22  been filed.

23          MR. SCHLOSSBERG:  It has been filed, Your Honor.

24          THE COURT:  So, I don't -- I don't -- I'm not sure

25  exactly why this matter was set for today.  I guess one

1   question is the original matter was to have the Curtises pay

2   rent and to vacate.

3          MR. SCHLOSSBERG:  That's --

4          THE COURT:  Are they -- are they paying rent to

5   anyone?

6          MR. SCHLOSSBERG:  No.  That's what the motion was set

7   for today, for them to pay rent.  Previously there was a motion

8   for remanding the matter.  That's what was being held in

9   abeyance, due to Mr. Rosen's adversary to be filed, which will

10  -- that is the whole issue in the trial that was raised by Mr.

11  Recio is to be decided in Mr. Rosen's case and that --

12         THE COURT:  And, Mr. Recio, you represent the

13  Curtises?

14         MR. RECIO:   I do, Your Honor.

15         THE COURT:  Okay.

16         MR. RECIO:  And at this point, I think that the real

17  party in interest is the Trustee and the two cases should be

18  consolidated.  This is an adversary from the Circuit Court in

19  Prince George's County and -- saying that this concerned an

20  asset of the estate.  And that's exactly what Rosen v.

21  Ballenger seeks to declare from this Court.

22         The reasons, if Your Honor has had a chance to glance

23  through the pleadings, there is compelling reason to believe

24  that this may well be an asset of the estate, that another --

25  the partnership name with another -- you know, using a straw

third party.  That's our view of the world.

So, Your Honor, I think that the cases should be consolidated.  And, frankly, I think at this point, it's the Trustee -- depending on how title comes out, the matter should be resolved in due course.

THE COURT:  I understand that there's a dispute about who owns the property, whether it's property of the estate or whether Ballenger has it.  I guess -- the question is why aren't the Curtises paying rent to someone or something while they're in possession?

MR. RECIO:  Well, Your Honor, the -- Mihn Vu Hoang at one point, did collect some rent from them.  And now -- and then she claims that she had nothing to do with the property. The checks were made payable to her and she cashed them.

Your Honor, the Curtises -- the property -- the history of these properties is that they're empty.  In some cases, they have serious title and repair problems and many others, and I'll defer to my colleagues, Mr. Schlossberg and Mr. Rosen.

The Curtises are not in the position to pay rent.  If they do -- what they're doing is preserving the property for the benefit of the Trustee, that is our view of the world.

Now, if Your Honor wants to evict them or direct them to be removed, that's fine.  But the changes are the property will end up being vacant.  And the question is, do you want

1 people in the property taking care of it?  Or do you want the

2 property to be vacant?

3          And if you look at it from that point of view, the

4 Curtises are doing a positive good.   I challenge this Court's

5 -- I subsequently impose -- I wasn't appearing to argue some of

6 the merits.  I have some additional authority.  I will -- if

7 Your Honor wants to reset that for a hearing, I would so ask.

8          THE COURT:  Well, here --

9          MR. SCHLOSSBERG:  Your Honor --

10          THE COURT:  Here's what --

11          MR. SCHLOSSBERG:  May I make a suggestion?  Mr. Rosen

12 just suggested this to me.  We have that date here on the 24th

13 when we're going to be back on a couple of other matters.  If

14 you could put the motion to pay rent into the registry of the

15 Court on for the 24th, that would give Mr. Rosen an opportunity

16 to evaluate what Mr. Recio just suggested.  That was that the

17 estate is being benefitted, even without receiving money.

18 That's an unusual argument, but it's certainly one worthy of us

19 taking a look at.

20          THE COURT:  All right.  So, we will --

21          MR. RECIO:  Your Honor, I'm not available on the

22 24th, but I can defer otherwise the issue being considered by

23 the Court.

24          (Attorneys confering off-the-record)

25          MR. RECIO:  Your Honor, if we could reset it, I am

1 available the 16th.

2          THE COURT:  Of June.

3          MR. RECIO:  Yes.

4          THE COURT:  We'll -- I guess we'll set it for the

5 16th of June then.  Does that work for you, Mr. Schlossberg?

6          MR. SCHLOSSBERG:  Yes, it does, Your Honor.

7          THE COURT:  Okay.

8          MR. SCHLOSSBERG:  And that's going to be our omnibus

9 day in June?

10         THE COURT:  We will set that for an omnibus day in

11 June.

12         MR. SCHLOSSBERG:  Okay.  And you're going to set that

13 in the morning, Your Honor?  Fridays are awful tough during the

14 summer to go out of here and go west.

15         THE COURT:  Ten o'clock.

16         MR. SCHLOSSBERG:  Ten A.M.

17         THE COURT:  Yes.

18         MR. RECIO:  Your Honor, I'm available in the

19 afternoon.  Your Honor said the afternoon.  I have a status

20 conference for your court on June 16th in the morning at 9:15.

21         THE COURT:  Just a moment.

22                    (Pause)

23         MR. SCHLOSSBERG:  Your Honor, we just consulted among

24 ourselves.  How about if we contact your courtroom deputy and

25 let her know?  Mr. Recio thinks he can perhaps make the 24th

1  work, and we'll try to get here and get it done.  Okay?  I'll

2  reach everybody -- I'll reach out to everybody by phone.

3          THE COURT:  All right.  We've got -- the other matter

4  set for today was Cybele, which we've -- we'll take up Cybele

5  General Partnership in a motion to dismiss filed by Pacific

6  Rim.

7          In addition -- in Cybele, I was confused.  There was

8  a -- if I'm not mistaken, there was a motion to sell the Drum

9  Avenue property?

10         MR. SCHLOSSBERG:  There is, Your Honor.

11         THE COURT:  And I -- I believe Mr. Vu -- Ms. Vu, I'm

12  sorry, Mr. Lynn --

13         MR. SCHLOSSBERG:  Mr. Lynn had filed an objection.

14  We're trying to negotiate a consent order.  We've had the

15  United States Trustee involved in the process, as well.

16         THE COURT:  Okay.

17         MR. SCHLOSSBERG:  We're pretty close.  I think we're

18  probably going to get this done.  We all agree the property

19  should be sold.

20         THE COURT:  Okay.  That's -- I -- I just want to make

21  sure -- so, I'm waiting for a consent order for that, or

22  further notice from you folks?

23         MR. SCHLOSSBERG:  Either consent order or we'll be

24  back on the 24th, with everything else.

25         THE COURT:  Why don't we set that for the 24th?  And

1  if you submit a consent order, we'll take it off.

2          MR. SCHLOSSBERG:  That will work, Your Honor.

3          THE COURT:  Do you -- do you have the number on that?

4                    (Pause)

5          THE COURT:  Mr. Schwartz, was it?

6          MR. SCHWARTZ:  Yes.

7          THE COURT:  Mr. Schwartz.

8          MR. SCHWARTZ:  I think the 24th or the 23rd would be

9  fine, if everyone's doing the 24th, I don't have a problem.  I

10 don't think that's a long motion.  At this point, it's really

11 based on the legal argument.  I don't think there's a lot of

12 factual development with regard to the motion to dismiss.

13         THE COURT:  Mr. Schlossberg, do you agree?

14         MR. SCHLOSSBERG:  Your Honor, I disagree whole

15 heartedly.  This -- Cybele -- we have determined Cybele is neck

16 deep in these transactions that Ms. Clay is unraveling.  There

17 will be factual testimony on the subject.  And, frankly, Your

18 Honor, I if had to do it on the 23rd, I couldn't do it if my

19 life depended on it because we're not deep enough into the

20 documents.

21         THE COURT:  Okay.  Should we separately set that for

22 -- do you have a date at this point?  Or are you still --

23         MR. SCHLOSSBERG:  Your Honor, it's -- I hate to keep

24 repeating this.  But I'm back in the same spot again.  I know

25 that I have personally reviewed at least a dozen transactions

1  involving Cybele that need to be presented before you.  And

2  this is just in the first month or two of the forensics

3  investigation.

4          THE COURT:  All right.

5          MR. SCHWARTZ:  Well, if I may, Your Honor.  The basis

6  for the Cybele bankruptcy is essentially an assertion by the

7  Trustee, Mr. Rosen, that Cybele is the alter ego of Thanh

8  Hoang.

9          THE COURT:  Based on a partnership agreement that

10  he's attached.

11          MR. SCHWARTZ:  Based on a partnership agreement that

12  he's the sole owner of the partnership.

13          And I think the -- the motion to dismiss is a

14  relatively limited motion which simply says, well, if it's

15  Thanh Hoang, then Cybele shouldn't be used as a mechanism.

16  It's not an entity cognizable in bankruptcy.  Therefore, it

17  either has to be -- Thanh Hoang ought to be filing motions or

18  the Trustee in his behalf or there ought to be some evidence

19  that it's an entity cognizable in bankruptcy.  But you can't

20  use a trade name or a name that doesn't represent an entity.

21  That's something other than their individual -- to encumber

22  property in that name.

23          So, it's a relatively narrow argument.  And that is

24  to say that the Trustee filed the Cybele 11 based on it being

25  the alter ego of an entity that's in Chapter 7.  The motion to

1  dismiss filed by a party in interest simply says, that's not a

2  cognizable entity in bankruptcy.

3          I think that's the narrow focus of the motion to

4  dismiss in Cybele.

5          THE COURT:  But if it's an improperly constituted

6  partnership, then aren't the assets the debtor's?  And,

7  therefore, all the assets are property of the estate anyway?

8          MR. SCHWARTZ:  Yes.  But then the -- and the debtor

9  would have to -- would properly file turnover motions or other

10 entities to determine the basis of the property of the estate.

11 That is to say in the Thanh Hoang bankruptcy, motions could be

12 filed.  And those would be joined.  And those may be factually

13 complicated motions.

14          All I'm saying is that in this case, Cybele was used

15 essentially as an encumbrance mechanism.  Not -- in other

16 words, if it's the Thanh Hoang bankruptcy, then --

17          THE COURT:  Right, but --

18          MR. SCHWARTZ:  -- the Trustee can file those motions.

19 But --

20          THE COURT:  But in either event, Mr. Rosen would be

21 in charge of those assets, either through the partnership or

22 directly as Chapter 7 Trustee in the Hoang case.

23          MR. SCHWARTZ:  Well, if it's a partnership that Thanh

24 Hoang has an interest in, yes.  If it's not, then no.  And

25 that's part of the crux of the dispute.  Pacific Rim claims

1   ownership of properties in the name of Cybele.  That's the

2   basis for filing the motion to dismiss.  But the -- the motion

3   here is simply filed on the basis of an 11 was filed.  And

4   there are no other entities that that's been done, to my

5   knowledge.

6          In other words, there are many properties that are

7   titled in names of entities -- partnership entities.  This is

8   the only one in which an actual Chapter 11 was filed for the

9   purpose of encumbering these properties.  And it seems to me

10  that that issue is separate from who owns these properties.

11  That --

12         THE COURT:  Right.  Well, we'll -- we'll take that up

13  on the motion to dismiss.

14         It does seem to me that either way, with Mr. Rosen in

15  charge in the interim, the -- the ultimate result -- based

16  mainly on what you're arguing would be the same.

17         So, what I'll do is we'll set that in for a status

18  conference on the motion to dismiss for June 16th.  And we'll

19  see where we are at that point.

20         MR. SCHWARTZ:  Well -- I understand what you're

21  saying.  I would like him, if he's filing it -- if he's filing

22  different motions, they ought to be filed at some point.

23  That's all I'm saying is that Cybele 11 -- I mean we're getting

24  to the point where there's going to be plans, disclosure

25  statement, other things.   If he's going to pursue it as an 11

1  -- I don't think that's intention -- that's -- uh, I wanted

2  that resolved relatively --

3  　　　　MR. SCHLOSSBERG:  The Trustee doesn't exactly know

4  what his intentions are at this point, Your Honor.  He admits

5  that freely.  We're awaiting the results of what we've seen so

6  far and to come to full fruition.

7  　　　　MR. GOLD:  Your Honor, may I be heard on this matter?

8  　　　　THE COURT:  Sure.  Certainly.

9  　　　　MR. GOLD:  Thank you, Your Honor.  David Gold on

10 behalf of the United States Trustee.

11 　　　　Your Honor, we purposely have not taken a position on

12 this matter yet simply because we believe that the Trustee

13 should be given time, specifically the Trustee's forensic

14 accountant should be given a time to review the plethora of

15 documents that are before him -- her.

16 　　　　THE COURT:  Is that -- Mr. Gold, is that in the

17 Cybele case or in all of these cases?

18 　　　　MR. GOLD:  This -- this is in the Cybele case

19 specifically, Your Honor.

20 　　　　THE COURT:  Okay.  All right.

21 　　　　MR. GOLD:  And I think -- I think the Trustee should

22 be given a chance to go through those documents prior to the

23 Court holding a subsequent hearing on this matter.

24 　　　　THE COURT:  Does the status conference on June 16th

25 work?

1      MR. SCHLOSSBERG:  Your Honor, I think --

2      THE COURT:  If there's nothing else on the 16th, and

3 the two of you want to continue that, let my chambers know and

4 we'll set that for another -- I don't want you to come in just

5 for a status conference.

6      MR. SCHLOSSBERG:  Well, I have a feeling, Your Honor,

7 come June 16th, we're going to have more than a few matters on

8 the morning docket.

9      THE COURT:  All right.

10      MR. SCHLOSSBERG:  That works fine.  Thank you.

11                   (Pause)

12      THE COURT:  Mr. Schlossberg, going through the items

13 that weren't set for today, but which it appeared to us as if

14 they had been fully briefed, and we had some question about

15 them.  They were included in the matter list that we circulated

16 this morning.  The -- the notice of intent to sell 3805 33rd

17 Street.

18      MR. SCHLOSSBERG:  Which case are we in, Your Honor?

19 I'm sorry.

20      THE COURT:  Oh, sorry.  We're in Hoang case.

21      MR. SCHLOSSBERG:  Okay.  Main case.  3805 33rd

22 Street, that's withdrawn, Your Honor.

23      MR. ROSEN:  We're withdrawing it.

24      THE COURT:  The notice is -- of intent to sell is

25 withdrawn?

1    MR. SCHLOSSBERG:  Has it been actually --

2    MR. ROSEN:  We are --

3    MR. SCHLOSSBERG:  We are withdrawing it.  Mr. Lynn's

4    aware that it's being withdrawn, that was the objection.

5    THE COURT:  Yes, Mr. Lynn had filed an objection.

6    MR. SCHLOSSBERG:  It turns out we agreed with his

7    objection.  He brought to our attention a valuation issue.  And

8    we undertook some research on that and had an appraiser come

9    and take a look at it.

10                      (Pause)

11   THE COURT:  Very well.  I believe that's everything

12   that we had.  If we go through the matters list --

13   MR. SCHLOSSBERG:  You're speaking of in the Hoang

14   case?

15   THE COURT:  Yes.

16   MR. SCHLOSSBERG:  Your Honor, I don't think I have

17   any others on that case.

18   THE COURT:  Yeah.  Motion to consolidate is going to

19   be held in abeyance.  The objection to claims are all going to

20   be held -- Claims Numbers 4 through 11 are already stayed by

21   Court order.  And 12, 13 and 15, we're going to wait for

22   further --

23   MR. SCHLOSSBERG:  Well, actually, Your Honor, I think

24   -- I want to make sure Mr. McClain is in accord on that, Your

25   Honor, because he's been seated back here and has not been a

1  party to our remarks so far.

2       Mr. McClain, do you understand what the Court is

3  saying we're going to do with yours?  Those are all going to be

4  set off?

5       MR. McCLAIN:  Until another date?

6       MR. SCHLOSSBERG:  They're being set off until it

7  turns out that there might be money in the estate.

8       MR. McCLAIN:  I understand that.

9       MR. SCHLOSSBERG:  Okay.  All right.  Now --

10      THE COURT:  Are you satisfied with that, Mr. McClain?

11      MR. McCLAIN:  Yes, sir, Your Honor.  I'm a realist.

12                    (Laughter)

13      THE COURT:  I like realists.

14      MR. SCHLOSSBERG:  Mr. McClain, we have -- in your

15  adversary, though, now that's set for the 24th for -- I think

16  it's a pretrial or status conference.  I'm not sure which.

17      THE COURT:  I believe it's a pretrial.

18      MR. SCHLOSSBERG:  Okay.  Now, Your Honor, I would

19  suggest, though, that that's a hearing that we should have.

20  That's not one I want to submit on an order because we need to

21  talk about it.

22      Mr. McClain claims that there is a piece of relief in

23  there that needs to be tried.  The Trustee's position is that

24  everything in there is just a claim and it's just -- at the end

25  of the day, it's all going to be an unsecured claim or not an

1 unsecured claim.

2          THE COURT:  Now, I just want to make sure -- I'm glad
3 we're going to discuss this because I was a little confused.
4 There are two McClain adversary proceedings.  And the one was
5 for the Trustee turnover, which I understood was resolved by
6 the --

7          MR. SCHLOSSBERG:  That is --

8          THE COURT:  -- by the motion -- by the consent order
9 in which Mr. McClain was going to pay rent for April, and I
10 believe --

11          MR. SCHLOSSBERG:  Mr. McClain's now vacated the
12 property, it's done.

13          THE COURT:  Vacated the property.  Okay.

14          MR. SCHLOSSBERG:  That -- the -- the 06 adversary is
15 complete.

16          THE COURT:  It's completed.

17          MR. SCHLOSSBERG:  It's complete.

18          THE COURT:  So, is --

19          MR. SCHLOSSBERG:  And I think that the order that you
20 -- that was entered -- not by you, Your Honor, but -- but by
21 Judge Alquist fully resolved the case.

22          THE COURT:  It did, okay.

23          MR. SCHLOSSBERG:  If you need another order, some --
24 some piece of paper from us to close out, you know, the file,
25 please let me know and I'll do whatever's necessary.

1            THE COURT:  That's okay.  I've read the order.  I

2   don't know if I noticed at the end whether it closed the case

3   or not.  But we'll -- I'll take care of that.

4            MR. SCHLOSSBERG:  Thank you.  That will be great,

5   Your Honor.

6            THE COURT:  You're agreeing with that, Mr. McClain,

7   that case should be closed?

8            MR. McCLAIN:  Yes, Your Honor.  That's my

9   understanding.

10           THE COURT:  Okay.  And then we have the 05 adversary

11  on the same property.  Now, the contract -- Mr. McClain had a

12  contract on that property, but it was rejected.  And I guess I

13  thought that would take care of that proceeding, as well.  So,

14  I'm surprised to hear -- which shouldn't take anyone by

15  surprise since I'm new at this.  But I was surprised to hear

16  that matter still has some life to it.

17           MR. McCLAIN:  Your Honor, there are other issues.

18  And certainly the specific performance is no longer an issue as

19  to that contract.

20           What is at issue, Your Honor, are -- is issues of

21  discrimination.

22           THE COURT:  Issues of what?

23           MR. McCLAIN:  Discrimination.

24           THE COURT:  Discrimination.

25           MR. McCLAIN:  Yes.  Which is within the Prince

1  George's County Code issues of misrepresentation.

2              THE COURT:  Say again, please?

3              MR. McCLAIN:  Issues of misrepresentation, Your

4  Honor.

5              THE COURT:  Misrepresentation, right.

6              MR. McCLAIN:  And issue of constructive fraud.  And

7  what has been filed electronically is a motion to add a third

8  party, the real estate broker that was involved in the

9  transaction.  And I was just informed today, Your Honor, that

10 the Trustee's attorney has not received a copy of the proposed

11 amended complaint.  And I propose in that amended complaint to

12 add respondeat superior, which would relate to the real estate

13 broker who advertised the property, as well as a count of

14 conspiracy, Your Honor.

15             THE COURT:  So, you -- so, to the extent -- let me

16 make sure I understand.  To the extent, though, that you have

17 these claims: misrepresentation, discrimination, and others,

18 against the debtor --

19             MR. McCLAIN:  Yes, Your Honor.

20             THE COURT:  -- those are claims for money damages

21 which are in the nature of your proof of claim and those --

22 wouldn't those be stayed, along with staying your proof of

23 claim?

24             MR. McCLAIN:  I'm not at liberty to state that at

25 this time, Your Honor.  I don't know what would be the outcome

1  of the -- of the amended complaint.

2           THE COURT:  Well, the -- the result of those claims

3  against the debtor would be if you were successful, you would

4  obtain a -- what we call a liquidated claim in bankruptcy.  You

5  would have an amount set that would establish your claim

6  against the debtor for you to share in the proceeds for

7  whatever comes out of the estate.

8           MR. McCLAIN:  I understand that, Your Honor.

9           THE COURT:  And what Mr. Schlossberg has been saying

10 is that it appears as if at this point, considering that the

11 IRS has such a large claim in this case, it appears as if none

12 of the general unsecured creditors, of which it would seem to

13 me you would be one, are going to get any distribution from the

14 estate.

15          And that's why he was saying all of these other

16 claims, objections are going to be put on hold.

17          MR. McCLAIN:  Two matters, Your Honor:  Just this

18 morning, I have filed an amendment to the claim which specifies

19 an unsecured priority claim which would be a deposit to

20 purchase real estate and not -- there's an allowance there of

21 twenty-two hundred twenty-five dollars.

22          THE COURT:  Okay.  So, you have a -- you have a claim

23 for -- you are asserting a priority claim?

24          MR. McCLAIN:  Unsecured priority claim, Your Honor.

25          And the second matter, Your Honor, is that I believe

1   that I'm within my rights to seek whatever redress I can get

2   concerning the matter.  And that would be the third party, if

3   that party is allowed to be entered into the case, Your Honor.

4        THE COURT:  So, you -- and then you also want to

5   assert a claim against the real estate broker?

6        MR. McCLAIN:  Yes, Your Honor.

7        THE COURT:  Okay.  All right.  Well, we'll -- and you

8   have filed an amended complaint, you say?

9        MR. McCLAIN:  I have filed the motion to be allowed

10   to amend the complaint, Your Honor.  I was just informed today

11   that, however, the proposed complaint was not -- did not come

12   through as an attachment.  And I will be uploading that, Your

13   Honor.

14        THE COURT:  Okay.

15        MR. SCHLOSSBERG:  Your Honor, there was a motion --

16   just to try and help out here.  There was a -- Mr. McClain

17   filed on April the 27th, I believe, a motion for leave to amend

18   his complaint.  He did not attach the amended complaint to the

19   motion so I have no idea what it was all about.

20        He tells me he's going to do that today, we'll get it

21   uploaded.  I will file a timely answer on behalf of the Trustee

22   to the motion.

23        Frankly, I see it perhaps as I was sensing the

24   Court's view of this, that this case will be -- if he's got a

25   new defendant, let's bring in -- I'll -- bring him in, but

1    bring him in in Circuit Court in Prince George's in a separate
2    cause of action.

3            The Trustee doesn't need to be involved in this
4    litigation any further.  There's no thing else here.  If, in
5    fact, this debtor has -- excuse me -- has a priority claim, he
6    needs to file a proof of claim for that.  We can look at it, we
7    an see whether or not there's some value to that.  But it
8    doesn't need to be in the context of this adversary proceeding.

9            THE COURT:  Right.

10            MR. SCHLOSSBERG:  We don't need this adversary.

11            THE COURT:  Um-hum.

12            MR. SCHLOSSBERG:  I'm going to be back here on the
13    24th anyhow at 2 P.M.  It's set right now for a pretrial and we
14    can has out all those issues at that time.

15            But I'm perhaps giving you a preview and perhaps
16    trying to give Mr. McClain a preview so he can think about
17    maybe if he wants to get rid of me because I'm sure I've been a
18    nettle in his butt a long, long time.

19            MR. McCLAIN:  I do owe the Trustee's attorney a phone
20    call, Your Honor.

21            THE COURT:  Okay.  Well, why don't you -- Mr.
22    Schlossberg will get your motion, he'll file his papers.  Why
23    don't we -- I -- I think we probably should set that one in for
24    the 16th, rather than the 24th, unless you --

25            MR. SCHLOSSBERG:  It's already on for the 24th.

1          THE COURT:  Oh, it is?  As a pretrial?

2          MR. SCHLOSSBERG:  We have a pretrial for the 24th.

3          THE COURT:  All right.  All right.  Well, we'll --

4     we'll keep a pretrial for the 24th.  And we'll -- we'll wait to

5     get your papers.

6          MR. SCHLOSSBERG:  We'll address the motion at that

7     time?

8          THE COURT:  Yes.

9          MR. SCHLOSSBERG:  Okay, fine.

10          THE COURT:  That will be set for the 24th, as well.

11          MR. McCLAIN:  Thank you, Your Honor.

12          THE COURT:  Okay.  All right.  Very well, Mr.

13     Schlossberg, are there any other matters that we haven't

14     covered?  Oh, sorry, Mr. Recio, I didn't see you there.

15          MR. RECIO:  Yes, Your Honor.  I wanted to -- well, if

16     I could respond.  I believe there are two matters I would like

17     to bring to the Court's attention.

18          First is objection to Claim Number 10 filed by Thomas

19     and Ioanna Tsianakas.

20          THE COURT:  Is this in the main case?

21          MR. RECIO:  Yeah, it's in the main case, Your Honor.

22     It's consolidated Hoang cases, Mihn Vu Hoang and Thanh Hoang.

23          Your Honor, I agreed to a standstill in this case to

24     permit discussion.  But the merits of the claim that have been

25     the subject of some e-mail communications have to do with

1  properties that are in my client's name and another property

2  that is 50 percent in my client's name, and my client has a

3  constructive trust theory that it's entitled to another third.

4        These are substantive issues that need to be

5  addressed and resolved.  I've been trying to set up a meeting

6  to resolve them to see whether or not we need to file that

7  adversary and counsel and the Trustee, Mr. Rosen and Mr.

8  Schlossberg, have been very, very busy.

9        Your Honor, this -- that is a claim that if we can't

10  resolve it, does need to go forward in the sense that it's not

11  an unsecured claim at all.  It's a claim of resolving title and

12  encumbrance on property titled in my client's name that the --

13  that Mihn Vu Hoang in her bankruptcy schedules claims she has

14  an interest in.  And it's got such a convoluted history, I

15  won't even start.

16        Your Honor, my suggestion on that is like revising

17  the other adversary for Thanh Hoang, the 05-09020, I think that

18  a meeting with myself and the Trustee and Mr. Schlossberg is

19  necessary.  I've been trying to get the meeting, and they've

20  been very busy.

21        My client and the Tsianakases, I was just told, has

22  even come by personally to Mr. Rosen's office.  He -- I got an

23  e-mail why in the heck can't I -- what kind of a lawyer am I

24  that I can't get the meeting going.

25        Your Honor, if we could perhaps -- in the interest of

1 moving the case forward, and not surprising you with another

2 adversary, or with a standstill agreement that becomes an

3 adversary, perhaps we can agree on a meeting and report to the

4 Court on that issue.  However the Court or Mr. Schlossberg and

5 Mr. Rosen would like to deal with it.

6         THE COURT:  Well, you -- you both have to talk about

7 the 902 -- 09020 -- 09020 matter.

8         MR. RECIO:  Sure.

9         THE COURT:  And how that's going to be brought to --

10 why don't you talk about this matter at the same time.

11         MR. RECIO:  All right.  Would you like us to report

12 back to the Court perhaps by the 24th on the merits, Your

13 Honor, or where we are on it?  Because I would like to move

14 forward.

15         THE COURT:  Well, there -- on a -- on -- there's a

16 pending order that's staying that.  If you're saying -- if

17 you're telling me that there's some part of that that you will

18 have to bring forward in an adversary proceeding, I would

19 suggest you talk to Mr. Schlossberg.  And if you can't make

20 arrangements, then file what you'll need to file.  But right

21 now, 10, I think is stayed.  And the objection to Claim 10 is

22 stayed.

23         So, I don't know that there's anything to report.

24 Either you -- if you -- if you can work something out as to how

25 to best bring that to the Court's attention, that's fine.

1    Otherwise, if you feel like you have to file -- I take it it's

2    a claim that you have -- your client has some -- some property

3    interest in an asset.  And, you know, Mr. -- you're free to

4    file that, Mr. Schlossberg will respond.

5          MR. RECIO:  They actually have an encumbrance -- one

6    of the partnerships -- one of these alter ego partnerships has

7    an incumbrance against the property.  And there are a series of

8    conflicting claims that have a long history.  And resolving it

9    makes a lot of sense, and I just need to sit down and try to do

10    that.

11          If we can't, we can go forward.  But I thought it

12    would be appropriate to let the Court know that that was out

13    there.

14          THE COURT:  Okay.

15          MR. RECIO:  And the only other --

16          THE COURT:  Thank you.

17          MR. RECIO:  -- matter I wanted to bring to the

18    Court's attention is 105 in the main case.  That was a motion

19    for contempt when Mihn Vu Hoang blew off or did not appear at a

20    deposition.  It's been continued quite a few times.

21          THE COURT:  Right.

22          MR. RECIO:  You know, I ended up being present, Mr.

23    Orenstein, Mr. Rosen was there, Mr. Gerry Chapman was there.

24    We think that we're entitled to some fees and we'd like to have

25    that heard.

1          Since this is not the first time Mihn Vu Hoang has

2     blown off a Court-ordered appearance, either in court or at a

3     hearing, there was some punitive sanctions that I was going to

4     urge.  And perhaps that could be set down for a hearing at some

5     point, Your Honor.

6               MR. SCHLOSSBERG:  Your Honor --

7               MR. RECIO:  That's the only other matter --

8               MR. SCHLOSSBERG:  Your Honor --

9               THE COURT:  That -- that -- I take it that matter

10    wasn't tied into the resolution on discharge?  Because it was

11    in the nature of she wasn't appearing and cooperating and

12    producing documents --

13              MR. SCHLOSSBERG:  Your Honor, that -- that resolution

14    to discharge was between -- solely between the Trustee, the

15    U.S. Trustee and the debtors.  And it didn't affect them.

16              That matter, in fairness to Mr. Recio, was set for, I

17    believe, March 29th.  Unfortunately on that day, we had another

18    matter., I think it might have been Mr. McClain's.  We tried a

19    substantial matter with -- it was a TRO on Mr. McClain's house

20    and we flipped a coin and we got to go first.  And

21    unfortunately for Mr. Recio, it took four hours and he never

22    got on.

23              That matter, in fairness to Mr. Recio, does need to

24    be reset.  And that was Docket Number 105.

25              THE COURT:  Right.

1          MR. SCHLOSSBERG:  And the response of Mihn Vu Hoang

2    was at 180.

3          THE COURT:  180, yes.  All right.  Why don't we set

4    that for June 16th then.  Mr. Wolpert has left.  But we'll

5    notice that up and make sure he's aware of that.

6          THE COURT:  That will be fine.  Thank you, Your

7    Honor.

8          MR. SCHLOSSBERG:  You're welcome, Carlos.

9          THE COURT:  The -- also in the main case, I have a

10   motion by Mr. Kirksten (phonetic), who I assume is not here.

11   But, Mr. Gold, it's your opposition.

12         I take it that's a discreet matter in the sense of

13   it's sort of between the U.S. Trustee's Office and Mr.

14   Kirksten.  I could set that in any time, and I don't need Mr.

15   Schlossberg and Mr. Wolpert and -- are you -- Mr. Schlossberg,

16   are you aware of that one?  It's Mr. Kirksten's --

17         MR. SCHLOSSBERG:  Yeah, I'm aware of the fee dispute.

18   And I'm not sure whether monies would come back to -- if there

19   was disgorgement, they would come back to the estate or back to

20   the debtor.

21         But considering all the other claims we have against

22   the debtors' funds, I think probably we do have an interest in

23   this and I want to sit in on it.

24         THE COURT:  All right.

25         MR. SCHLOSSBERG:  Your Honor, if you could put that

1  in on an omnibus date, it would work fine.

2        THE COURT:  We'll -- let's set that in for the 16th.

3        MR. SCHLOSSBERG:  All right.

4        THE COURT:  And this will be in the morning of the

5  16th.  It's Numbers -- Docket Number 474 and 480.

6        MR. SCHLOSSBERG:  What was the number on that, Your

7  Honor.

8        THE COURT:  Pardon?

9        MR. SCHLOSSBERG:  The number of that -- those docket

10  entries.

11        THE COURT:  Docket 474 is the motion to vacate and

12  480 is the opposition.

13        MR. SCHLOSSBERG:  And, Your Honor, help me out for

14  just a second.

15        THE COURT:  Sure.

16        MR. SCHLOSSBERG:  You said motion to vacate.  I might

17  have lost something procedurally.

18        THE COURT:  Oh, what happened was Judge Alquist

19  entered an order requiring Mr. Kirksten to disgorge his fees

20  because he hadn't filed his disclosure statement.  And then he

21  filed a motion to vacate that order.

22        MR. SCHLOSSBERG:  To vacate that -- so, that's how it

23  got teed up.

24        THE COURT:  Yes.

25        MR. SCHLOSSBERG:  Okay.

1            THE COURT:  And then the U.S. Trustee filed an

2    opposition to that.

3            MR. SCHLOSSBERG:  thank you.  And that's also going

4    to be on 6/16 at ten A.M.

5            Can I -- Your Honor, just to clear up the record

6    here, go back through what's set for what time --

7            THE COURT:  Yes.

8            MR. SCHLOSSBERG:  -- right now?  Because --

9            THE COURT:  Yes, I think that would be a good idea.

10           MR. SCHLOSSBERG:  I think I've got them.  On 5/24, we

11   have the McClain matters, which were already scheduled.

12           We have in the Hao Vu case the motion --

13           THE COURT:  Just a minute.

14           MR. SCHLOSSBERG:  -- for protective order --

15           THE COURT:  Just a minute.  I want to get -- I've got

16   a couple lists here.  I want to make sure I'm -- that I'm on

17   board with you.

18                          (Pause)

19           THE COURT:  Okay.  Would you start again, Mr.

20   Schlossberg?

21           MR. SCHLOSSBERG:  All right.  On the 24th of this

22   month at 2 P.M., the Court presently has scheduled the pretrial

23   in the McClain matters -- matter, it's -- only the 05 case is

24   still alive.  The 06, you're going to dispose of.

25           In the 05 case, we have the hearing -- right now,

1 there's a pretrial and also at that time, the Court is going to

2 hear the motion to amend complaint.

3        Also on the 24th at 2 P.M. in the Hao Vu case, the

4 Court has set Mr. Gins' motion to dismiss and his motion for

5 protective order, and my opposition.

6        In the case -- this would be in the Hoang case, it

7 would be Curtis litigation, Rosen v. Ballenger and Curtis v. --

8 excuse me, Bierman, et al., versus Curtis and Curtis.

9        THE COURT:  Right.

10       MR. SCHLOSSBERG:  Those cases all together will be

11 heard on the subject of the motion to pay rent into the

12 registry on --

13       MR. RECIO:  Well, subject to my --

14       MR. SCHLOSSBERG:  -- on -- on the 24th, subject to

15 Mr. Recio's availability.  But that's what we -- that's what we

16 anticipate as we sit here right now.

17       THE COURT:  Right.

18       MR. SCHLOSSBERG:  And I would suggest as a scheduling

19 matter, set it for that date and we will file a consent motion

20 to move the date if, in fact, Mr. Recio is not available.

21       Also on the 24th, Your Honor has set the -- in the

22 Cybele case the Drum Avenue sale notice and Mr. Lynn's

23 objection.  If we're unable to settle that, we'll hear that on

24 the 24th.

25       Then on June 16th, in Cybele, we have scheduled --

1  you have scheduled, Your Honor, a status conference on the

2  motion to dismiss at ten A.M.

3        And in the Hoang case, sorry to bounce, but I am --

4  the motion for contempt filed by Mr. Recio at -- at Docket

5  Number 105, and the response at 180, both will be heard that

6  morning at ten A.M.

7        And the -- also on that date and at that time, the

8  Kirksten fee matters will be heard, Items 474 and 480.

9        If the Court has any other things that are on those

10 dates, I'd like to know.

11       MR. RECIO:  Your Honor, on June 16th, at ten A.M., as

12 you'll recall, I have the conflict in the morning.  I was

13 thinking it was in the afternoon that Your Honor was going to

14 indicate, I think I indicated that initially.

15       Perhaps on the contempt motion, I can speak with Mr.

16 Schlossberg, if that's you, to argue?

17       MR. SCHLOSSBERG:  No.

18       MR. RECIO:  Okay.

19       MR. SCHLOSSBERG:  That's not mine to argue.

20       THE COURT:  I think you have to speak with Mr.

21 Wolpert.

22       MR. SCHLOSSBERG:  No, he's asking me if I would argue

23 it for him.

24       THE COURT:  Oh.

25       MR. SCHLOSSBERG:  I'll tell you what, I'll take a

1  look at that.  I'll take a look at it.  Maybe I'm wrong.  Maybe

2  it does belong to the estate.  Let me see.

3         MR. RECIO:  It's a case where she failed to appear at

4  a deposition that was properly noted.  So, it's a pretty

5  straightforward case.

6         Your Honor, it's either that or we need to reschedule

7  it.  The only other thing I can do is I can try to move my

8  other Superior Court initial scheduling conference, which I

9  will try to do.

10         THE COURT:  All right.

11         MR. SCHLOSSBERG:  All right.  Let's do the same

12  thing.  And if I may suggest is we set it -- set it for that

13  date on the 16th in the morning.  And if Mr. Recio can't make

14  it, we will file a consent motion to continue that.

15             (Attorneys conferring off-the-record)

16         THE COURT:  All right.  Very well.  Mr. Recio, if

17  you're not able to make it, notify the Court and we'll continue

18  that.

19         Then just to -- these we did not set, but the Minbilt

20  matter, you're going to -- we're going to enter a pretrial

21  schedule giving you 150 days discovery and 120 identify experts

22  with an October 11, ten o'clock pretrial.

23         MR. SCHLOSSBERG:  Status conference actually, Your

24  Honor.

25         THE COURT:  Status conference, very good.

1          MR. SCHLOSSBERG:  I'm not sure what the distinction

2     is, but --

3                         (Pause)

4          THE COURT:  And the Van T. Vu case, we have withdrawn

5     -- Mr. -- Mr. Lynn is withdrawing the motion to dismiss.

6          And the motion a substantive consolidation of that,

7     and a motion for substantive consolidation filed in the Hoang

8     case -- main case are going to be held in abeyance pending

9     discovery and other matters.

10          The -- I'll set a plan and disclosure statement

11     hearing in the Van T. Vu case.  We have the motion for a

12     protection order in that case.

13          MR. SCHLOSSBERG:  Motion for protective order in that

14     case?

15          THE COURT:  In the Van T. Vu case.  Mr. Lynn --

16     that's the discovery dispute between Mr. Lynn and Mr. Recio

17     that we talked about.

18          MR. LYNN:  Actually, Your Honor, I believe there was

19     a motion -- David Lynn represent Van Vu.

20          There was a motion for protective order filed by Hao

21     Vu in connection with discovery that requested of him by the

22     Trustee.

23          MR. SCHLOSSBERG:  Yeah.

24          MR. LYNN:  But we have not filed a motion for

25     protective order in this -- in the Van Vu case.

1           THE COURT:  Okay.

2                (Attorneys conferring off-the-record)

3           MR. LYNN:  Mr. -- Mr. Recio filed a motion to compel.

4    We filed a response.  And that was the issue that the Court

5    reserved for hearing, I guess, when we're done with the

6    procedural matters.

7           THE COURT:  Very well.  I had that wrong then.  I

8    guess it was a motion for a motion to compel.  I'm -- Mr. Lynn

9    and Mr. Recio, I'm going to reverse myself and set that for May

10   24th.  I think it's best to keep this as a -- keep this as a

11   status conference.  I don't want to sandbag anybody and have a

12   hearing on the merits.  So, we'll go on May 24th on your motion

13   to compel.

14          MR. RECIO:  Um --

15          THE COURT:  In the Van Vu case.

16          MR. RECIO:  Okay, Your Honor.  I have to clear a

17   conflict on the 24th, which I'm going to try very hard to do.

18          THE COURT:  Okay.  That's Item Number 32, just so

19   there's no confusion over -- because I referred to it as a

20   motion for protective order earlier.  It's a motion to compel.

21   If you have trouble with that, file a motion for a continuance

22   or talk to Mr. Lynn, if you want, and then call my clerk and

23   we'll set it in for a hearing.

24          Actually if you can't make it on the 24th -- well,

25   you have troubles on the 16th, as well, don't you?

1          MR. RECIO:  Well, in the morning.  Let me see what I

2     can --

3          THE COURT:  All right.

4          MR. RECIO:  -- do, Your Honor.

5          THE COURT:  All right.  We'll set it for the 24th.

6          MR. RECIO:  I am very busy, but I -- I don't like

7     moving things.

8          THE COURT:  All right.

9          MR. RECIO:  But we'll work something out, Your Honor.

10          THE COURT:  Okay.  Mr. Schlossberg, we had an

11     adversary proceeding that was filed against William and Yvonne

12     Smith.  I believe it's the first one, 05-01952.

13          MR. SCHLOSSBERG:  Yes, sir.

14          THE COURT:  And that -- there is a pretrial in

15     December of '05 where the defendants were going to file a

16     motion for remand.  I know that wasn't set for today, but could

17     you just --

18          MR. SCHLOSSBERG:  They didn't file the motion for

19     remand.

20          THE COURT:  Yeah, so --

21          MR. SCHLOSSBERG:  So --

22          THE COURT:  -- what are we doing with the case?

23          MR. SCHLOSSBERG:  Uh --

24          THE COURT:  What do you want to do with the case?

25          MR. SCHLOSSBERG:  You know, the first thing I'm going

1   to do, Your Honor, is I'm going to file -- this is something

2   that slipped through the cracks here.  We're going to file the

3   same motion that was filed against the Curtises to get rent

4   paid into the registry of this Court because that -- there has

5   been no rent paid in here for months now on this one.  We've

6   got to get that --

7            THE COURT:  Okay.

8            MR. SCHLOSSBERG:  Okay?  And at this point, I think a

9   motion for remand would be untimely, in any event.  So, we'll

10  get this moving tomorrow.

11           THE COURT:  All right.

12           MR. SCHLOSSBERG:  Thank you.

13                     (Pause)

14           THE COURT:  We set it on the adversary, Mr.

15  Schlossberg, it's set for May 15th, Rosen v. Vu, you'll submit

16  a 26(f) statement.  So, we --

17           MR. SCHLOSSBERG:  I'm sorry, Your Honor.  I didn't

18  get that one?

19           THE COURT:  On the -- on the Rosen v. Vu adversary

20  proceeding on Ainsley Road, the pretrial is set for May 15th,

21  you'll submit a 26(f) statement, so we'll take -- hopefully

22  take that off the stock.  But we will -- we'll wait until we

23  get your statement by Monday.

24           MR. SCHLOSSBERG:  That's correct, Your Honor.  You're

25  going to get a 26(f).  And we're also going to move to

1  consolidate the objection to claim with whichever one of those

2  adversaries it relates to.

3           THE COURT:  Right.  Okay.

4           MR. SCHLOSSBERG:  And we're going to get the pretrial

5  form of order -- excuse me -- yes.  The scheduling order form

6  from Mr. Abou Antoun.

7           THE COURT:  I believe that's all that I have.

8           MR. SCHLOSSBERG:  Very --

9           THE COURT:  Do you have anything else?

10          MR. SCHLOSSBERG:  I'm very disappointed, Your Honor,

11 I was hoping there'd be more.

12                      (Laughter)

13          THE COURT:  Well, I have three lists, I think I've

14 covered them all.

15          All right.  Well, --

16          MR. SCHLOSSBERG:  Thank you.

17          THE COURT:  -- I appreciate everybody.  Again, I hope

18 there wasn't too much confusion on what was going to happen

19 today.  But I feel as if we have a better sense of where the

20 cases are going, and certainly I do.  So, I appreciate

21 everybody's time and I'll see you on May 24th, if not sooner.

22          COURTROOM DEPUTY:  All rise.

23          MULTIPLE SPEAKERS:  Thank you, Your Honor.

24          UNIDENTIFIED ATTORNEY:  Thank you for your patience.

25                (Proceedings Adjourn at 3:47 P.M.)

1

2                    **C E R T I F I C A T I O N**

3

4          I, Karen Hartmann, certify that the foregoing is a

5    correct transcript to the best of my ability, from the

6    electronic sound recording of the proceedings in the above-

7    entitled matter.

8

9

10    /s/  *Karen Hartmann*                    Date:  May 15, 2006

11    TRANSCRIPTS PLUS

12

13

14

15

16

17

18

19

20

21

22

23

24

25